JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Roman Ortiz, Sr., appeals the trial court's decision granting summary judgment in favor of United States Fidelity and Guaranty Company (USFG) and dismissing his claim for uninsured motorist coverage in an amount equivalent to the policy's liability limits of $1,000,000. On appeal, Ortiz assigns the following error for our review:
"I. The trial court committed prejudicial error in granting Appellee's motion for summary judgment, by ruling, as a matter of law, that the plaintiff cannot sustain a claim for uninsured benefits under the business automobile policy."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On August 2, 1989, Ortiz, while acting in the course and scope of his employment, was involved in an automobile accident with an unidentified driver who fled the scene. As a result of the accident, Ortiz suffered serious and permanent, disabling injuries. Ortiz has been unable to work since the accident.
 {¶ 4} At the time of the accident, Ortiz was employed with the Cleveland Coca-Cola Bottling Company, Inc. Ortiz placed his employer on notice that he wished to pursue an uninsured motorist claim. The Cleveland Coca-Cola Bottling Company, Inc., was insured pursuant to two policies issued by USFG, a commercial general liability policy, and a business auto policy. The trial court, in its decision on the motion for summary judgment, ruled inter alia, that the commercial general liability policy provided no coverage in this matter, and Ortiz does not appeal that portion of the decision.
 {¶ 5} On October 25, 1990, Ortiz and USFG reached an agreement for $25,000 in settlement of Ortiz's uninsured motorist coverage benefits (the express limits of the coverage). USFG issued a check to Ortiz, which he accepted, and Ortiz subsequently executed the appropriate release.
 {¶ 6} On August 4, 2003, Ortiz filed suit against USFG seeking additional uninsured motorist coverage. In the complaint, Ortiz alleged that the settlement was based on USFG's express guarantee that the policy limit was $25,000. However, in light of Ohio Supreme Court holdings issued subsequent to the settlement, arguably the limits would have been $1,000,000.
 {¶ 7} On May 14, 2004, USFG filed a motion for summary judgment on the grounds that the general liability policy was not applicable, and that Ortiz's settlement of his uninsured motorist claim barred the subsequent lawsuit. Ortiz opposed the motion and argued that the parties to the settlement agreement made a mutual mistake of fact concerning the limits of the uninsured motorist coverage then applicable.
 {¶ 8} On January 13, 2005, the trial court granted USFG's motion for summary judgment. Ortiz now appeals.
 Summary Judgment {¶ 9} In his sole assigned error, Ortiz argues the trial court erred in granting summary judgment in favor of USFG, by ruling that he could not sustain a claim for increased uninsured benefits under the business automobile policy. We disagree.
 {¶ 10} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[3]
 {¶ 11} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 {¶ 12} In the instant case, Ortiz contends that there is a genuine issue of fact as to whether he is entitled to additional coverage under the business auto policy issued by USFG. Ortiz claims that the 1990 settlement agreement was reached on the erroneous conclusion that the liability limit was $25,000, instead of $1,000,000.
 {¶ 13} In support of this argument, Ortiz relies on Gyori v. Coca-ColaBottling Group, Inc.,[6] and Linko v. Indemnity Ins. Co. of NorthAmerica.,[7] cases decided six years after the settlement of his claim. Gyori and Linko provide that an insurance company within the State of Ohio cannot offer a policy of insurance which provides different liability and uninsured motorist limits unless the insured rejects the identical uninsured motorist coverage. Ortiz contends that he did not reject the uninsured motorist coverage; thus, he is entitled to additional compensation. For the reasons that follow, we reject Ortiz's contentions.
 {¶ 14} The record before us reveals that the business automobile policy that is central to this appeal was issued on May 1, 1989, and, as such, is subject to the version of R.C. 3937.18, as amended by House Bill 1, effective January 5, 1988. The statutory law in effect at the time an insurance policy is issued or renewed defines the scope of uninsured motorist coverage in the policy.[8]
 {¶ 15} At the time the business automobile policy was issued to Abarta, Inc., the parent company of the Cleveland Coca-Cola Bottling Company, R.C. 3937.18 provided in relevant part:
"A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto under provisions approved by the superintendent of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. The named insured shall have the right to reject such coverage, or may require the issuance of coverage for bodily injury or death in accordance with a schedule of optional lesser amounts approved by the superintendent, that shall be no less than the limits set forth in section 4509.20 of the Revised Code for bodily injury or death * * *."
 {¶ 16} The record further reflects that Charles Hanlon, Chief Financial Officer of Abarta, Inc., elected to reduce the limits of liability for uninsured motorist coverage, which according to the above cited version of the statute, he was permitted to do. In his affidavit, Hanlon stated:
"That knowing that United States Fidelity and Guaranty Company would provide uninsured motorist coverage to Abarta, Inc. and its subsidiary corporations in the amount of automobile liability limits, knowing that uninsured motorist coverage is designed to provide to an insured the ability to obtain insurance protection in the same amount as the insured purchases for the protection of others who may be injured by an insured, and desiring to purchase a lower limit of protection for Abarta, Inc.'s and its subsidiary corporations' employees, Abarta, Inc. desired to purchase from United States Fidelity and Guaranty Company uninsured motorist coverage with a limit of liability for the State of Ohio of $25,000 at the time of purchasing the renewal business auto policy effective May 1, 1989."[9]
 {¶ 17} The foregoing indicates that Abarta, Inc. made a knowing and intelligent rejection of an offer to purchase uninsured motorist coverage equal to the policy's liability limits. We conclude Abarta Inc.'s election to reduce its uninsured motorist limit to $25,000 was valid at the time it was done and at the time of Ortiz's accident. Further, it is also undisputed that during the settlement negotiations, USFG furnished the policy and declarations to Ortiz, and the policy showed that the uninsured motorist coverage was $25,000.
 {¶ 18} In any negotiation for settlement, the parties take the risk that there may be a subsequent change of law, or a subsequent change in the interpretation of existing law, that will adversely affect their claim. However, a subsequent change of case law does not constitute grounds for obtaining relief.[10] It is well-settled that a release of a cause of action is ordinarily an absolute bar to a later action on any claim encompassed within the release.[11]
 {¶ 19} Nevertheless, more than thirteen years later, Ortiz now seeks to vacate the settlement agreement on the grounds of mutual mistake. In order to avoid a release on the grounds of mutual mistake, the releasor must establish by clear and convincing evidence that it was executed by mutual mistake as between himself and the releasee.[12]
 {¶ 20} Here, Ortiz claims that he executed the settlement agreement on the erroneous belief that the uninsured motorist limit was only $25,000. Ortiz does not set forth any facts establishing by clear and convincing evidence that USFG suffered the same misapprehension. Further, we have previously stated that Abarta Inc.'s reduction of its uninsured motorist policy limit was valid under then prevailing statute and case law.
 {¶ 21} We also decline to disturb the aforementioned settlement agreement because it is uncontroverted that public policy favors settlements.[13] Without such, it would be difficult for parties to attempt the amicable adjustment or compromise of disputes.[14]
Moreover, when parties agree to settle cases, litigation is avoided, costs of litigation are contained, and the legal system is relieved of the burden of resolving the dispute with the resulting effect of alleviating an already overcrowded docket.[15] Perhaps the most salubrious aspect of settlement is its finality; the conflict is resolved and the appellate process is avoided. Were this court to affirm appellant's contentions, no controversy could ever truly be concluded.
 {¶ 22} Based on the foregoing, we conclude that the trial court properly granted summary judgment in favor of USFG. Accordingly, we overrule Ortiz's sole assigned error.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., and MICHAEL J. CORRIGAN, J., CONCUR.
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] 76 Ohio St.3d 565, 1996-Ohio-358.
[7] 90 Ohio St.3d 445, 2000-Ohio-92.
[8] Wolfe v. Wolfe, 88 Ohio St.3d 246, 2000-Ohio-322; Ross v. FarmersIns. Group of Cos. 82 Ohio St.3d 281, 1998-Ohio-381.
[9] Charles Hanlon's Affidavit.
[10] Doe v. Trumble County Children Services Board (1986),28 Ohio St.3d 128; In re: The Estate of Christopher L. Bondurant v. J.C.Penny Casualty Ins. Co. (April 21, 1994) Fairfield App. No 41-CA-93.
[11] Haller v. Borror (1990), 50 Ohio St.3d 10, 13, citing Perry v. M.O'Neil Co. (1908), 78 Ohio St. 200.
[12] Sloan v. Standard Oil (1964), 177 Ohio St. 149, 153.
[13] Humm v. City of N. Royalton (April 3, 1975), Cuyahoga App. No. 33431.
[14] Scherer v. Piper (1875), 26 Ohio St. 476, 479.
[15] Bogan v. Progressive Cas. Ins. Co. (1988), 36 Ohio St.3d 22.