[Cite as *Fahey Banking Co v. Rees Ents. Inc.*, 2010-Ohio-4172.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

THE FAHEY BANKING COMPANY,

    PLAINTIFF-APPELLEE,                 CASE NO. 9-09-40

    v.

REES ENTERPRISES INC., ET AL.,         O P I N I O N

    DEFENDANTS-APPELLANTS.

Appeal from Marion County Common Pleas Court
Trial Court No. 06-CV-0968

Judgment Affirmed

Date of Decision:    September 7, 2010

APPEARANCES:

    *Kevin P. Collins*  for Appellants

    *Michael N. Schaeffer and Scott N. Schaeffer*  for Appellee

Case No. 9-09-40

**WILLAMOWSKI, P.J.,**

{¶1} Defendants-Appellants, Rees Enterprises, Inc., et al. ("Appellants" or "the Rees parties"), appeal the decision of the Marion County Court of Common Pleas awarding judgment on a promissory note and attorney fees in favor of Plaintiff-Appellee, Fahey Banking Company, Inc. ("Fahey Bank"). Appellants maintain that the trial court erred because the judgment entry was contrary to the parties' settlement agreement and that it was improper to award attorney fees. For the reasons set forth below, the judgment is affirmed.

{¶2} Fahey Bank loaned $401,509.02 to Appellants on December 27, 1999. The original promissory note ("the Note") had a repayment date of January 1, 2005, and was signed by all of the Rees parties.[1] Appellants Rebecca and David Rees also executed a Guaranty of any and all obligations of Rees Enterprises, Inc. The parties subsequently entered into a Modification Agreement on December 3, 2005, which altered some of the terms.

{¶3} On November 29, 2006, Fahey Bank brought suit stating that Appellants breached the terms and conditions of the Note and Modification Agreement by failing to pay the Note when due and failing to make the payments required by the Modification Agreement. Fahey Bank stated that as of November

---

[1] The promissory note listed Rees Enterprises, Inc. as the borrower, and was signed by Rebecca Rees, individually and as president of Rees Enterprises; Richard Rees, individually and as vice president of Rees Enterprises; David Rees, individually and as secretary/treasurer of Rees Enterprises; and Ellen Rees, individually.

24, 2006, Appellants owed a balance of $399,190.48, plus default interest from the date of default to the date of judgment, late fees and interest from the date of judgment at the prime rate, plus 10% per annum.

{¶4} After many discussions and negotiations over nearly two years, the parties reached an agreement ("Settlement Agreement") at a status conference on June 26, 2008. The terms of the Settlement Agreement called for Appellants to pay a reduced amount, $298,421.05, at a reduced interest rate within 90 days. Interest payments of $1,243.42 were to commence immediately (within 10 days) and continue every 30 days until the loan was paid in full. The Rees parties also had the option of a 30-day extension.

{¶5} The Settlement Agreement also specified the procedures that were to be followed if Appellants did not pay the reduced amount within the specified time period. The terms of the agreement were read into the record and a written Settlement Agreement was later prepared and executed.

{¶6} Appellants breached their obligations under the Settlement Agreement by failing to make the required payments and other defaults. Pursuant to the terms of the Settlement Agreement, Fahey Bank submitted an affidavit summarizing the amount the Rees parties owed along with a proposed judgment entry. On October 27, 2008, the trial court entered judgment in favor of Fahey Bank and against the Rees parties, jointly and severally, "in the amount of

$559,770.80 with interest accruing from October 22, 2008, at the rate of $143.5404 per day, plus reasonable attorney fees and costs." (Oct. 27, 2008 J.E.) Appellants immediately appealed, but this appeal was dismissed sua sponte by this Court for lack of a final appealable order because the amount of attorneys' fees and costs had not been resolved. See 3d Dist. No. 9-08-63, dismissed on December 15, 2008.

{¶7} After this dismissal, the trial court reviewed extensive briefing on the issue of reasonable attorney fees and costs and held a hearing on May 21, 2009 to accept additional evidence. On September 18, 2009, the trial court issued a judgment entry awarding Fahey Bank attorney fees of $27,077.50 plus costs of $1,413.55 for a total award of $28,491.05.

{¶8} On October 15, 2009,[2] the Rees parties appealed this judgment setting forth the following three assignments of error for our review.

**First Assignment of Error**

**The trial court erred by granting an award of attorney fees to [Fahey Bank] because the Settlement Agreement did not expressly provide for the payment of attorney fees.**

**Second Assignment of Error**

**The trial court's judgment in the amount of $559,770.80 plus interest from October 22, 2008 at the rate of $143.5404 per day was contrary to the Settlement Agreement.**

---

[2] This appeal was temporarily stayed due to Richard and Ellen Rees filing for bankruptcy. Subsequently, an Agreed Order for Relief from Stay was granted for the limited purpose of concluding the appellate proceedings in this case, thereby allowing this appeal to continue.

**Third Assignment of Error**

**The trial court erred by awarding to [Fahey Bank] $27,077.50 for attorney fees and $1,413.55 for costs.**

{¶9} In order to facilitate our review, we elect to address the assignments of error out of order. In the second assignment of error, Appellants maintain that the trial court's award of $559,770.80 plus interest was not expressly provided for in the Settlement Agreement. Appellants contend that the Settlement Agreement was not clear or specific in the amount that was to be paid upon default and they argue that the trial court should have held a damages hearing in order to determine the amount of the judgment.

{¶10} Fahey Bank maintains that the terms of the Settlement Agreement were clear and unambiguous, and a hearing was not required. Fahey Bank understood the terms to mean that if Appellants performed under the Settlement Agreement, a Judgment Entry of Dismissal would be filed and the matter would be over. However, if Appellants failed to pay the agreed upon settlement, Fahey Bank was to submit an affidavit and proposed judgment entry and the trial court would grant a judgment for the full amount due under the stated terms of the REI Loan Documents. "REI Loan Documents" was a defined term in the Settlement Agreement, referencing the Rees Enterprises, Inc. ("REI") Promissory Note, along with an associated security agreement and the personal Guaranty.

{¶11} The REI Loan Documents and the Settlement Agreement are contracts and the trial court based its judgment on the interpretation of those contracts. Issues involving the construction of contracts are matters of law, and thus, when reviewing questions involving contract interpretation, this Court uses a de novo standard of review. *Great Invest. Properties, L.L.C. v. Bentley*, 3d Dist. No. 9-9-36, 2010-Ohio-981, ¶13, citing *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, and *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus, superseded by statute on other grounds.

{¶12} The parties agreed to the following payment terms in Paragraph 4 of the Settlement Agreement:

> **Amount of Payoff for REI Loan. If the REI loan is paid in full within the time required by this agreement, the amount of the payoff shall be $298,421.05, plus interest on such balance at the Wall Street Journal prime rate, with credit for any payments made pursuant to paragraph 5 below.** *If the REI Loan is not paid in full within such time period, then the amount due shall be the amount due under the stated terms of the REI Loan Documents, including without limitation interest at post-maturity rate, and all costs permitted by the terms of the REI Loan Documents.*

(Settlement Agreement, pp. 1-2, ¶4, emphasis added.) In the event of default by Appellants, the mechanism chosen by the parties for informing the trial court, presenting the amount due and creating the proposed judgment entry was also specified in the same paragraph of the Settlement Agreement:

> **Fahey shall be authorized to file the appropriate [Judgment] entry on the earlier of ninety-one days after the date of this Agreement, or upon default. In conjunction with the filing of the entry granting monetary judgment Fahey shall provide an affidavit of facts evidencing payments received and the existence of default under this agreement.**

(Id.) In addition, to the written Settlement Agreement, the terms of the agreement that were read into the record at the June 26, 2008 conference, and which Appellants quote in their brief, stated:

> **In the event of default, Fahey Bank may submit an affidavit advising the Court as to the nature of the default, advising the Court of the payments received for purposes of credit, *and granting judgment for that balance.* (Emphasis added.)**

{¶13} On October 24, 2008, Fahey Bank filed the required affidavit, setting forth the default and the amount due under the REI Loan Documents and including the proposed judgment entry referenced in the Settlement Agreement and at the June 26, 2008 status conference. The trial court then issued its judgment entry based upon this information.

{¶14} We find that the Settlement Agreement clearly and unambiguously called for the amount of the judgment entry to be determined based upon the information in the affidavit and the REI Loan Documents in the event that Appellants failed to make the agreed payments under the Settlement Agreement. There was no provision in the Settlement Agreement to hold a hearing to

determine the judgment amount, nor was there any reference in the transcript of the status conference.

{¶15} The purpose of the Settlement Agreement was to reach a final settlement in the matter, not to go back and continue the litigation if Appellants defaulted on their promise to pay. This would have only resulted in further delay of the case. There would not have been any benefit or incentive for Fahey Bank to settle for a reduced payment if Appellants' failure to honor the Settlement Agreement only resulted in further hearings and continued litigation. This would allow the Appellants to have it both ways, i.e., negotiate a reduced payment in settlement, but be allowed to continue on with litigation with no consequences if they chose not to honor the Settlement Agreement.

{¶16} Furthermore, upon presentation of the Notice of Default, the affidavit and the judgment entry, Appellants did not challenge any of the facts or submissions in the trial court below. It was uncontroverted that Appellants breached the Settlement Agreement. They never requested a hearing, filed a counter-affidavit, or presented any contrary evidence to the facts attested to in Fahey Bank's affidavit. Appellants' second assignment of error is overruled.

{¶17} Appellants' first and third assignments of error both complain that the trial court erred in awarding attorney fees and costs. In the first assignment of error, Appellants argue that the Settlement Agreement did not include an express

obligation for the payment of attorney fees and that the trial court erred as a matter of law in concluding that the agreement provided for the payment of attorney fees. Appellants maintain the Ohio courts follow the "American Rule," which requires that each party pay his or her own attorney fees.

{¶18} Appellants correctly state that Ohio has long adhered to the "American Rule," whereby parties are *generally* responsible for their own attorney fees. See *Wilborn v. Bank One Corp*., 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶7. However, Appellants also correctly note that there are several exceptions to this rule. Awards of attorney fees are proper if based upon: (1) statutory provisions allowing for the recovery of attorney fees by the prevailing party; (2) a finding of bad faith; or, (3) in cases where the contract between the parties allows for fee-shifting. Id.; *Heffner Investments, Ltd. v. Piper*, 3d Dist. Nos. 10-07-09 & 10-07-10, 2008-Ohio-2495, ¶56.

{¶19} Two of the exceptions are applicable in this case, permitting the trial court to award Fahey Bank payment of its attorney fees. The contractual agreements between the parties provided for the payment of attorney fees and R.C. 1301.21 allows the award of attorneys' fees to a prevailing lender in an action such as this.

{¶20} Although the Settlement Agreement itself did not specifically stipulate the payment of "attorney fees," that matter was included by reference. If

Appellants had honored the Settlement Agreement and paid the reduced payoff amount, attorney fees would not be calculated. However, as stated above in paragraph 4 of the Settlement Agreement: "[i]f the REI Loan is not paid in full within such time period, then the amount due shall be the amount due under the stated terms of the REI Loan Documents, including without limitation interest at post-maturity rate, *and all costs permitted by the terms of the REI Loan Documents*." (Emphasis added.) The terms of the original Promissory Note in the REI Loan Documents specifically included a section on "Collection Costs and Attorney's Fees" stating that "I agree to pay *all costs of collection*, replevin or any other or similar type of cost if I am in default" and that "if [Fahey Bank] hires an attorney to collect this Note, *I [Appellants] also agree to pay any fee you incur with such attorney ***.*" (Emphasis added.) Appellants argue that any ambiguity in the agreements must be construed against Fahey Bank because the bank drafted the documents. However, we find that the terms of the Settlement Agreement and the Note clearly and unambiguously require Appellants to pay all of Fahey Bank's costs incurred, including attorney fees, in the event that Appellants failed to comply with the Settlement Agreement.

{¶21} Appellants' argument that the effect of the Settlement Agreement "was to supplant the original agreement, i.e., the promissory note" is also baseless. The Settlement Agreement specifically states, in Section 6 – Validity of Loan

Documents, that "the REI Loan Documents *** are each in full force and effect, are binding upon each of the Rees Parties ***." By reaffirming and acknowledging the terms of the REI Loan Documents and incorporating them into the Settlement Agreement, the parties unambiguously recognized the obligation of Appellants to pay "all amounts due," including attorneys' fees and costs upon their default under the Settlement Agreement.

{¶22} Furthermore, R.C. 1301.21, "Enforcement of commitment to pay attorneys' fees," states:

> **(B) If a contract of indebtedness includes a commitment to pay attorneys' fees, and if the contract is enforced through judicial proceedings or otherwise after maturity of the debt, a person that has the right to recover attorneys' fees under the commitment, at the option of that person, may recover attorneys' fees in accordance with the commitment, to the extent that the commitment is enforceable under divisions (C) and (D) of this section.**

The definition of a "contract of indebtedness" includes notes, such as the promissory note in this case, as long as the indebtedness is not primarily for personal, family, or household purposes. See R.C.1301.21(A)(1). Divisions C and D of R.C. 1301.21 require that the total amount owed exceed one hundred thousand dollars and that the amount of the attorney fees is reasonable. The Note underlying the trial court's judgment was a commercial contract of indebtedness; the debt had matured by virtue of appellants' default; "the contract [was] enforced through judicial proceedings"; and the initial contract of indebtedness exceeded

$100,000. Having met the requirements of the statute, Fahey Bank was entitled to enforce Appellants' contractual commitment to pay attorneys' fees and costs.

**{¶23}** The trial court had the authority to award attorneys' fees and costs because the parties' agreements clearly provided for that payment and it was authorized under R.C. 1301.21. Appellants' first assignment of error is overruled.

**{¶24}** In the final assignment of error, Appellants maintain that the amount of attorney fees was improper because there was insufficient evidence to support a finding that they were necessary and reasonable. Furthermore, Appellants complain that the total amount was based upon services rendered throughout the entire case, whereas Appellants believe that only those attorney fees related to the enforcement of the Settlement Agreement would be proper.

**{¶25}** Any attorney fees awarded by a court must be "fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Nottingdale Homeowners' Ass'n, Inc. v. Darby*, 33 Ohio St.3d 32, 514 N.E.2d 702, at the syllabus; *Wilborn*, 121 Ohio St.3d 546, at ¶19, fn.3. And, R.C. 1301.21(D) states:

> **\*\*\* In determining the amount of attorneys' fees that is reasonable, all relevant factors shall be considered, including but not limited to, the nature of the services rendered, the time expended in rendering the services, the amount of money and the value of the property affected, and the professional skill and expertise of the attorney or attorneys rendering the services**.

**{¶26}** We review a trial court's determination regarding attorney fees for an abuse of discretion. *Bittner v. TriCounty Toyota, Inc*. (1991), 58 Ohio St.3d 143, 146, 569 N.E.23 464 (outlining a two step process for a trial court to follow when determining the amount of fees to award the prevailing party). The Ohio Supreme Court stated in *Bittner* that when awarding reasonable attorney fees, the trial court should first calculate the number of hours reasonably expended on the case and then multiply that number by a reasonable hourly rate. Id. at 145. The trial court may then modify that calculation by applying the factors listed in DR 2-106(B).[3] Id.; see, also, *Stults & Associates, Inc. v. United Mobile Homes, Inc.*, 3d Dist. No. 9-01-09, 2001-Ohio-2240; *Bergman Group v. OSI Development, LTD*, 12th Dist. No. CA2009-12-080, 2010-Ohio-3259, ¶¶65-68. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error in judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶27}** First, Appellants provide no argument nor do they point to any facts or law supporting their contention that "only those attorney fees related to the enforcement of the Settlement Agreement would be proper." As discussed above in our review of the first assignment of error, in the event that Appellants did not honor the Settlement Agreement the provisions for the payment of fees that were

---

[3] Professional Conduct Rule 1.5 is now applicable.

included in the REI Loan Documents would be applicable. These documents, executed long before the existence of the Settlement Agreement and reaffirmed by the Settlement Agreement, required the payment of "any fee[s]" associated with hiring an attorney in the event of a default.

{¶28} In order to determine whether attorney fees were payable and what would be reasonable, the trial court reviewed the briefs that both parties submitted on the issue and held a hearing. The trial court concluded that the time expended and hourly rate of $250 were reasonable based upon the evidence presented.

{¶29} Fahey Bank presented considerable evidence in support of its request for attorneys' fees and costs, including: (1) a fourteen-page memorandum describing the history of the matter and addressing all factors contained in Professional Conduct Rule 1.5; (2) a seven-page affidavit of attorney Michael N. Schaeffer detailing his experience and skill in matters of this type, the progress of the litigation below, the reasonableness of the hourly rate, the necessity of the work performed, a review of the total fees and costs and the overall reasonableness thereof; (3) the affidavit of the law firm's office administrator attesting that all bills had been paid by Fahey Bank; (4) forty-two pages of detailed billing records, explaining every charge down to the tenth of an hour, for services rendered and costs incurred from October 2006 through the May 21, 2009 hearing; (5) testimony of Michael Schaeffer, counsel for Fahey Bank in the matter; and, (6)

testimony of expert witness Mark Sheriff who testified that the hours worked were reasonable, the rates charged were reasonable for a lawyer of Mr. Schaeffer's reputation and experience in matters of this type, and that in his opinion the overall fees and costs were reasonable. Appellants had the opportunity to cross examine the witnesses at the hearing, but presented no witnesses or evidence of their own.

{¶30} Fahey Bank's attorney also testified that the case was made more difficult than it should have been because of the personalities of the players and opposing counsel and the fact that Appellants retained numerous lawyers on their behalf, making litigation more time-consuming because of having to frequently "start-over" when new counsel was employed. Fahey Bank had a single attorney throughout, although it was also necessary to retain West Virginia counsel pertinent to liens on Appellants' out-of-state property. Furthermore, Fahey Bank's attorney testified that Appellants failed to produce records and requested documents, and the matter involved numerous pre-trials, client meetings, and attempts to reach a settlement, including a day-long mediation.

{¶31} We find that there was more than sufficient competent and credible evidence to support the findings of the trial court concerning attorney's fees and costs. Appellants have failed to demonstrate that the trial court abused its

discretion or that its findings were against the weight of the evidence.  The third assignment of error is overruled.

**{¶32}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**