[Cite as *Lima Pub. Library Bd. of Trustees v. State Emp. Relations Bd.*, 2011-Ohio-1730.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

LIMA PUBLIC LIBRARY
BOARD OF TRUSTEES,

                                           CASE NO.  1-10-51

      APPELLEE/CROSS-APPELLANT,

      v.

STATE EMPLOYMENT
RELATIONS BOARD, ET AL.,               O P I N I O N

      APPELLANTS/CROSS-APPELLEES.

**Administrative Appeal from Allen County Common Pleas Court**
**Trial Court No. CV 2010 0217**

**Judgment Affirmed**

**Date of Decision:    April 11, 2011**

APPEARANCES:

    *Katie Tesner*  for Appellant/Cross-Appellee, State Employment
                      Relations Board

    *Thomas C. Drabick, Jr.* for Appellant/Cross-Appellee, OAPSE

    *David S. Farkas*  for Appellee/Cross-Appellant

**PRESTON, J.**

{¶1} Appellants/cross-appellees, the State Employment Relations Board and the Ohio Association of Public School Employees, AFSCME Local 4, AFL-CIO and its Local 776, appeal the judgment of the Allen County Court of Common Pleas, which reversed the State Employment Relations Board's decision regarding the appellee/cross-appellant's, the Lima Public Library Board of Trustees', violation of R.C. 4117.11(A)(1) and (5). For the reasons that follow, we affirm.

{¶2} This particular case involves an unfair labor practice ("ULP") charge filed by the Ohio Association of Public School Employees, AFSCME Local 4, AFL-CIO and its Local 776 on February 1, 2007, concerning collective bargaining, and specifically deals with the question of whether the Lima Public Library Board of Trustees rejected a tentative agreement, which had been reached as a result of negotiations between the Library Board and Union representatives.

{¶3} As general background information, this appeal involves the Lima Public Library Board of Trustees (hereinafter "the Library Board"), which serves the city of Lima and the surrounding area through its main public library, four additional branch libraries, an Ohio State University (Lima branch) outlet, and the roving MediaMobile. In addition, the Library's bargaining unit employees are represented in collective bargaining matters by the Ohio Association of Public

Case No. 1-10-51

School Employees, AFSCME Local 4, AFL-CIO and its Local 776 (hereinafter "OAPSE" or "the Union"). Both parties engage in collective bargaining in accordance with Chapter 4117 *et seq.*, under the oversight of the State Employment Relations Board (hereinafter "SERB"). Allegations of unfair labor practices ("ULPs") are handled first by SERB's staff investigators and then, if necessary, by a staff Administrative Law Judge ("ALJ"). Moreover, SERB is headed by a three-member board, each of whom is appointed by the Governor. If the matter proceeds to the ALJ, the ALJ will conduct a hearing and will then make proposed findings of fact and conclusions of law to SERB, which will ultimately decide to either accept or reject the ALJ's proposed findings.

{¶4} The general facts are undisputed and are stated as follows. On November 28 and 29, 2006, the Union and the Library Board, through their designated representatives, met for the purpose of negotiating a successor collective bargaining agreement ("CBA"), which was to be implemented following the expiration of the parties' then current CBA on December 31, 2006. The Library's director, Scott Schafer, at that time was the Library Board's "designated representative." Schafer, along with other library administration members and Union representatives, engaged in negotiations and eventually reached a tentative agreement ("TA"), which, pursuant to the collective bargaining rules, had to be presented to both the Board and the Union for final approval.

-3-

{¶5} Significantly, in particular, the TA reached between the parties contained a dues deduction provision, or otherwise known as a "fair share" provision. A fair share provision, in general, requires that dues be paid by employees who opt not to join the union once a fixed percentage of union membership has been reached. It is undisputed that the Library Board had historically opposed fair share clauses, and that the 2001-2003 CBA had not contained a fair share provision. Nevertheless, in the CBA effective for 2004 until 2006, which was the current CBA in effect at the time of the negotiations, there was a fair share provision. In particular, this provision stated, "If 90% of bargaining unit members are members of the Union, employees who are not members of the Union shall pay to the Union an agency fee as a condition of employment with the Board. Such agency fee shall begin when the 90% membership occurs." While the Library Board opposed fair share clauses, it had agreed to the 90% membership threshold on the basis that such a figure would reflect overwhelming support for the Union.

{¶6} With respect to the 2006 TA, while the Union initially asked for a 50% membership threshold, the TA reached in the November 2006 negotiations contained a fair share provision that reduced the percentage of bargaining unit members who were required to be members of the Union down to 70% for the agency fee provision to be triggered. The Library Board's negotiating team

warned the Union negotiating team that the Library Board had historically opposed fair share provisions and that it might well consider the lower threshold in the TA a "deal breaker." Despite the warning, the Union negotiating team asked the Library Board's director to present the TA containing the 70% fair share provision to the Library Board.

{¶7} The Union subsequently ratified the TA on December 8, 2006. Soon after, the TA was submitted to the Library Board at its Board of Trustees' meeting on December 19, 2006. The Library Board went into executive session to discuss the TA. According to the Library Board's meeting minutes, following the executive session, Library Board member Dr. Wilfred Ellis made a motion "to vote to accept the presented contract except for the fair share provision." (Joint Ex. 2). This motion was seconded and carried. (Id.). Again according to the meeting minutes, following the motion, Union President Kathy Stark asked why the Library Board had opposed the fair share provision and Union Vice President and negotiating team member Denise Holler asked the Library Board members if they realized that their position could take everyone back to the table. (Id.). Dr. Ellis responded that because of the fair share fee provision, the Library Board could not accept the contract. (Id.).

{¶8} Deputy Clerk Treasurer Jane Pahl's notes from the December 19, 2006 Library Board meeting reflect: "Collective Bargaining Agreement all okay

except Dr. Ellis-re'fair share prov" [sic], and that the Library Board's position would put them back into negotiations. (Respondent Ex. 5).

{¶9} In addition, the minutes from a December 19, 2006 Department Head meeting stated that "the Board accepted the collective bargaining unit's position except for the fair share clause," and that "after the first of the year, the Union may decide to go to a Mediator to help resolve the issue." (Joint Ex. 3).

{¶10} Thereafter, on December 21, 2006, the Union filed a ULP charge (Case No. 06-ULP-12-0618) with SERB against the Library Board alleging that the Library Board violated R.C. 4117.11(A)(1) and (5) by dealing directly with the employees of the bargaining unit and by rejecting the TA after its bargaining representatives had committed to it.

{¶11} Subsequently, the Union and the Library Board met with a mediator in January 2007 and February 2007 in unsuccessful attempts to resolve the issue. During this time, the Library Board received a fax from a local media outlet (WLIO-NBC Lima) that consisted of a notice WLIO had received from the Union indicating, in part, "Fact: The Library Director and their high priced Cleveland Attorney entered into a tentative agreement which they both agreed to recommend to the Library Board. The tentative agreement contained a change in the 'Union Security Provision'. Fact: The Board rejected the agreement, refusing to follow the recommendation of the Director and their own Attorney."

{¶12} As a result, on February 1, 2007, the Union filed additional ULP charges (Case No. 07-ULP-02-0048) with SERB alleging a violation of R.C. 4117.11(A)(1) and (5) for the Library Board's failure to bargain in good faith and its refusal to sign the parties' TA as the parties' collective bargaining agreement.[1] Essentially, the Union claimed that the Library Board had only rejected the fair share clause in the TA, but had not actually rejected the entire TA as a whole. As a result, pursuant to the language in R.C. 4117.10(B), which states that a legislative body must either accept or reject a TA as a whole, the Union claimed that the TA should be deemed "accepted" as a matter of law.

{¶13} On April 12, 2007, SERB dismissed Case Nos. 06-ULP-12-0618 and 07-ULP-02-0048, stating in its directive that it found no probable cause to believe that the Library Board violated R.C. 4117.11.

{¶14} Consequently, on May 3, 2007, the Union filed a ULP (Case No. 07-ULP-05-0199) charge against the Library Board again alleging that the Library Board violated R.C. 4117.11(A)(1) and (5) on the basis that the Library Board had refused to sign the parties' TA as the parties' collective bargaining agreement. The Union again claimed that the Library Board had only rejected the fair share clause in the TA, but had not actually rejected the entire TA as a whole. As a

---

[1] The Union also filed two other ULP charges against the Library Board on unrelated issues which were consolidated with the aforementioned charge. However, neither one of those other ULP charges are at issue in this appeal.

result, pursuant to the language in R.C. 4117.10(B), which states that a legislative body must either accept or reject a TA as a whole, the Union claimed that the TA should be deemed "accepted" as a matter of law. This time SERB found that probable cause existed to believe that the Library Board had violated R.C. 4117.11(A)(1) and (5) by failing to sign the successor agreement, thus a complaint was issued on September 21, 2007 in Case No. 07-ULP-05-0199. Thereafter, on September 16, 2008, a hearing before an ALJ was held, wherein testimonial and documentary evidence was presented.

{¶15} On March 10, 2009, the ALJ issued a proposed order which stated her findings of facts and conclusions of law, and ultimately concluded that the Library Board had not violated R.C. 4117.11(A)(1) and (5) by failing to sign and execute the successor agreement.

{¶16} On February 9, 2010, SERB issued its decision disagreeing with the ALJ's proposed order as to the Library Board's violation of R.C. 4117.11(A)(1) and (5), and found that the Library Board had violated R.C. 4117.11(A)(1) and (5) by failing to sign and execute the successor agreement and failing to bargain in good faith.

{¶17} The Library Board appealed SERB's decision to the Allen County Court of Common Pleas, and on July 15, 2010, the trial court reversed SERB's decision regarding the Library Board's violation of R.C. 4117.11(A)(1) and (5) for

failure to sign and execute the successor agreement, but the trial court affirmed SERB's decision to deny the Library Board's request for attorney fees.

{¶18} The Union filed its notice of appeal on August 11, 2010, and SERB filed its notice of appeal on August 12, 2010. SERB and the Union filed a joint appellants' brief and raise one assignment of error for our review. Additionally, the Library Board filed its notice of cross-appeal on August 20, 2010, and in its cross-appeal, the Library Board raises one assignment of error for our review.

### THE UNION AND SERB'S ASSIGNMENT OF ERROR

**THE COMMON PLEAS COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW WHEN IT REVERSED SERB'S DIRECTIVE FINDING THE LIMA PUBLIC LIBRARY BOARD OF TRUSTEES VIOLATED R.C. 4117.11(A)(1) AND (5) FOR FAILING TO SIGN AND EXECUTE THE SUCCESSOR COLLECTIVE BARGAINING AGREEMENT.**

{¶19} In their joint assignment of error, SERB and the Union claim that the trial court abused its discretion and erred as a matter of law when it reversed SERB's directive finding that the Library Board had violated R.C. 4117.11(A)(1) and (5) by failing to sign and execute the successor agreement.

{¶20} As an initial matter, we note that the Union filed an unfair labor charge against the Library Board claiming that the Library Board had violated R.C. 4117.11(A)(1) and (5) by failing to sign and execute the successor agreement. R.C. 4117.11 provides, in pertinent part:

> **(A)   It is unfair labor practice for a public employer, its agents or representatives to:**
>
> **(1)   Interfere with, restrain or coerce employees in the exercise of the rights guaranteed in Chapter 4117 of the Ohio Revised Code or an employee organization in the selection of its representative for the purposes of collective bargaining or the adjustment of grievances;**
> **\* \* \***
> **(5)   Refuse to bargain collectively with the representative of his employees recognized as the exclusive representative or certified pursuant to Chapter 4117. of the Revised Code;**

R.C. 4117.11(A)(1) and (5).   In particular, the Union claimed below, and continues to maintain, that the Library Board only rejected the fair share clause in the TA, but did not actually reject the entire TA as a whole.  As a result, pursuant to the language in R.C. 4117.10(B), which states that a legislative body must either accept or reject a TA as a whole, the Union argued that the TA should be deemed "accepted" as a matter of law.  R.C. 4117.10(B) provides as follows:

> **The public employer shall submit a request for funds necessary to implement an agreement and for approval of any other matter requiring the approval of the appropriate legislative body to the legislative body within fourteen days of the date on which the parties finalize the agreement, unless otherwise specified, but if the appropriate legislative body is not in session at the time, then within fourteen days after it convenes. *The legislative body must approve or reject the submission as a whole, and the submission is deemed approved if the legislative body fails to act within thirty days after the public employer submits the agreement.* The parties may specify that those provisions of the agreement not requiring action by a legislative body are effective and operative in accordance with the terms of the agreement, provided there has been compliance with division (C) of this section. If the legislative body rejects the submission of the**

> **public employer, either party may reopen all or part of the entire agreement.**

R.C. 4117.10(B) (emphasis added). Again, the Union's position was that because the Library Board voted to "accept the presented contract except for the fair share provision," it neither accepted nor rejected the TA as a whole, and as a result, failed to act within thirty days, and consequently the TA then was deemed approved as a matter of law.

{¶21} The parties presented their witnesses and documentary evidence to an ALJ. After reviewing all of the evidence, the ALJ made her findings of fact and proposed conclusions, one of which was that the Library Board had not violated R.C. 4117.11(A)(1) and (5) by failing to sign and execute the successor agreement. (ALJ's Proposed Order). While SERB agreed with the ALJ's findings of fact, it disagreed with the ALJ's proposed conclusion and ultimately found that the Library Board had committed an unfair labor practice. (SERB Decision). In particular, SERB stated that according to the Library Board's meeting minutes, the Library Board's "motion to accept the presented contract, except for the fair share provision," had not been sufficient to constitute an acceptance or rejection "as a whole"; therefore, such action did not meet the statutory requirements of R.C. 4117.10(B), and as a result pursuant to R.C. 4117.10(B), the TA was deemed accepted as a matter of law. (Id.). Because the Library Board had refused to sign

-11-

the successor agreement, SERB found that it had violated R.C. 4117.11(A)(1) and (5) and had committed an unfair labor practice. (Id.).

{¶22} On appeal to the Allen County Court of Common Pleas, after having considered all of the evidence in the record, the trial court reversed SERB's directive finding that SERB's decision had not been supported by substantial evidence since it had only relied on the "isolated 'accepted except for' language found on the non-verbatim transcript of the December 19, 2006 meeting." (July 15, 2010 JE at 5).

{¶23} Now on appeal, SERB and the Union claim that the trial court abused its discretion by utilizing facts not in the record and disregarding the evidence SERB relied upon in finding that the Library Board failed to accept or reject the TA as a whole under R.C. 4117.10(B). We disagree.

{¶24} R.C. 4117.13(D) governs appeals of SERB's orders to courts of common pleas, and provides, in pertinent part, as follows:

> **Any person aggrieved by any final order of the board granting or denying, in whole or in part, the relief sought may appeal to the court of common pleas of any county where the unfair labor practice in question was alleged to have been engaged in, or where the person resides or transacts business, by filing in the court a notice of appeal setting forth the order appealed from and the grounds of appeal. \* \* \***
> **The court has exclusive jurisdiction to grant the temporary relief or restraining order it considers proper, and to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the board. The**

> **findings of the board** *as to the facts, if supported by substantial evidence* **on the record as a whole, are conclusive.**

R.C. 4117.14(D) (emphasis added).

**{¶25}** Additionally, pursuant to R.C. 119.12, when a trial court reviews an order of the administrative agency, the trial court *must* consider the *entire record* to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with the law. *Cincinnati v. State Emp. Relations Bd.*, 10th Dist. No. 09AP-261, 2009-Ohio-5782, ¶7, citing *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 110-11, 407 N.E.2d 1265. See, also, *University Hospital, Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 343-44, 587 N.E.2d 835, fn.3. As such, it has been explained that a trial court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.'" *Provisions Plus, Inc. v. Ohio Liquor Control Comm.*, 10th Dist. No. 03AP-670, 2004-Ohio-592, ¶7, quoting *Lies v. Veterinary Med. Bd.* (1981), 2 Ohio App.3d 204, 207, 441 N.E.2d 584.

**{¶26}** Furthermore, while we acknowledge that a trial court must give due deference to the administrative agency's resolution of evidentiary conflicts, the

agency's findings are not conclusive. *Cincinnati v. State Emp. Relations Bd.*, 2009-Ohio-5782, at ¶8, citing *Conrad*, 63 Ohio St.3d at 110-11. See, also, *Bartchy v. State Bd. of Edn.*, 120 Ohio St.3d 205, 2008-Ohio-4826, 897 N.E.2d 1096, ¶37 (noting that while an agency's findings of fact are not conclusive, they are presumed correct and "must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable.") The trial court may reverse, vacate, or modify the administrative order if, after reviewing the evidence, it determines that "'there exist legally significant reasons for discrediting certain evidence relied upon by the administrative body.'" *Bartchy*, 2008-Ohio-4826, ¶37, quoting *Ohio Historical Soc. v. State Emp. Relations Bd.* (1993), 66 Ohio St.3d 466, 470-71, 613 N.E.2d 591, quoting *Conrad*, 63 Ohio St.2d at 111.

{¶27} Moreover, we note that our review as an appellate court is more limited and centers on whether the trial court abused its discretion. *Provisions Plus, Inc.*, 2004-Ohio-592, at ¶8, citing *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 614 N.E.2d 748. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. While SERB and the Union claim that the trial court abused its discretion by utilizing facts not in the record

and by disregarding the evidence SERB relied upon in finding that the Library Board failed to accept or reject the TA as a whole under R.C. 4117.10(B), we find that the trial court did not abuse its discretion in finding that SERB's decision was not supported by substantial evidence.

{¶28} After reviewing the record, despite SERB and the Union's arguments to the contrary, we find that all of the facts relied on by the trial court were contained within the record. While SERB's findings should be afforded deference, its findings are not conclusive, and pursuant to statutory authority, the trial court was required to review the *entire record*. Here, all of the facts that the trial court relied upon had been gathered at the hearing before the ALJ, and in fact, had been presented to SERB for its review. Thus, we cannot say that the trial court relied on facts outside the record.

{¶29} Furthermore, the trial court's judgment entry clearly indicates that it did not disregard the evidence SERB relied upon in rendering its decision. The trial court did consider the statement regarding the vote contained within the Library Board's meeting minutes from December 19, 2006, but correctly recognized that the meeting minutes were only general summaries of the actions taken at the meeting, not a verbatim transcript. So while the trial court did consider the meeting minutes, unlike SERB, the trial court did not solely consider that isolated statement in the meeting minutes, but rather looked at the entire

record in making its determination. For example, in addition to the isolated "accept except for" language in the Library Board's meeting minutes, the trial court found that there had been evidence of a subsequent statement made by Dr. Ellis whereby he had explained that while the Board was satisfied with the remaining provisions in the TA, the fair share provision was so unacceptable that the Library Board could not accept the contract. The trial court also considered a statement made by a Union member at the December 19, 2006 meeting in which she asked the Library Board if they knew that their action would send them back to the bargaining tables. Finally, the trial court noted that the Union had even acknowledged in its first ULP charge filed with SERB, and in a fax from a local media outlet, WLIO-NBC Lima, following the Library Board meeting, that the TA had been rejected by the Library Board. Ultimately, after considering all of the evidence, the trial court found that "under the circumstances, the decision by the Board to reject the tentative agreement cannot be characterized as acceptance except for – as a substantial weight of the evidence of the record as a whole fails to reflect this finding. Rather, the evidence reflects that the Board was so dissatisfied with the inclusion of the fair share provision that they refused to accept the contract. In doing so, the Board rejected the contract *because of* the unsatisfactory provision and OAPSE acknowledged this rejection by its subsequent actions." (July 15, 2010 JE at 6-7) (emphasis in original).

{¶30} Consequently, we do not find that the trial court abused its discretion. Pursuant to statutory authority, the trial court was required to consider the *entire record* in determining whether SERB's order was supported by substantial evidence and was in accordance with the law. As the trial court noted, SERB only relied on one isolated statement contained within a single piece of documentary evidence, but the trial court found that after looking at the entire record, there were additional pieces of evidence which, when considered, demonstrated that SERB's decision was not supported by substantial evidence. Given the amount of evidence in the record, we cannot say that the trial court's decision was unreasonable, arbitrary, or unconscionable.

{¶31} Nevertheless, SERB and the Union also argue that the trial court erred as a matter of law when it ignored the qualifying phrase "as a whole" from its interpretation of R.C. 4117.10(B), and failed to defer to SERB's prior interpretation of R.C. 4117.10(B), which they claim was affirmed by the Seventh District Court of Appeals in *State Employment Relations Board v. City of Martins Ferry* (June 6, 1991), 7th Dist. No. 90-B-37.

{¶32} In *Martins Ferry*, after receiving a tentative agreement reached between the union and the city, the city council considered the tentative agreement in executive session, and allegedly rejected the TA and made a counter proposal to the union. 7th Dist. No. 90-B-37, at *1. The union filed a similar ULP charge

against the city with SERB claiming that the city had failed to sign or execute the successor agreement on the basis that the city had failed to accept or reject the TA as a whole. Id.

{¶33} A SERB hearing officer found, based on the facts of the case, that the city had timely and properly rejected the TA and recommended no violation of R.C. 4117.11(A)(1) and (5). Id. However, SERB disagreed and found that the city council had failed to reject the TA in accordance with R.C. 4117.10(B), thus the agreement had been approved by operation of law and, as a result, ordered the city to put the TA into retroactive effect. Id. at *1-2. On appeal to the Court of Common Pleas of Belmont County, the trial court reversed SERB's directive and set aside the order. In its decision, the trial court stated that the record was "without such evidence as a reasonable mind could rely upon to conclude council did not entirely reject the agreement, [thus] this court is compelled to reverse the decision of SERB." Id. at *2.

{¶34} Thereafter, on further appeal to the appellate court, the Seventh District Court of Appeals reversed the trial court's decision and reinstated SERB's order because based upon the record before SERB, it could not be determined what formal action the city council had taken the day the TA had been presented to it. Id. at *2-5. Specifically, the Seventh District stated:

**The evidence clearly established that there was no vote ever taken relative to acceptance, rejection or counterproposal during the "executive session." Upon the record, as it was made before the State Employment Relations Board, there can be no determination whether a quorum of council and, as was previously testified to, a quorum calls for five members, ever voted to approve, reject or counterpropose the tentative agreement submitted. * * * The foregoing reasoning leads us to the conclusion that, pursuant to R.C. 4117.10, when a tentative agreement is submitted to a legislative body, the legislative body may do one of two things. It may only approve or reject the tentative proposal within 30 days of submission. Failure to so act by the legislative body shall trigger a deemed approval of the tentative agreement.**

Id. at *5.

{¶35} While SERB and the Union cite to *Martins Ferry* for support of their position that the trial court erred as a matter of law, we find *Martins Ferry* distinguishable from the case sub judice. The problem in *Martins Ferry* was that it could not be determined from the record before SERB whether the legislative body had ever voted to approve, reject, or counter propose the tentative agreement submitted. In fact, the evidence indicated that the council had considered the TA in executive session but had failed to take a formal public vote, and instead made a final offer in response, which was taken back to the lieutenants and patrolman as a counter proposal. Because the evidence indicated that the city council had failed to take a formal vote when the TA had been presented, the Seventh District

concluded that the council's failure to act resulted in the approval of the TA by operation of R.C. 4117.10(B).

{¶36} Here, the Library Board clearly acted. Not only was there evidence of a formal vote from the Library Board's meeting minutes on December 19, 2006, but several witnesses testified that a vote had taken place that night. Thus, we find *Martins Ferry* not dispositive, and given our discussion above, we cannot say that the trial court's decision to overrule SERB's directive was an error of law or an abuse of discretion.

{¶37} SERB and the Union's joint assignment of error is, therefore, overruled.

### THE LIBRARY BOARD'S CROSS ASSIGMENT OF ERROR

**THE TRIAL COURT FAILED TO ORDER A HEARING TO DETERMINE THE FEES AND COSTS RECOVERABLE BY THE PUBLIC LIBRARY FROM LOCAL 4, WHEN LOCAL 4 KNOWINGLY FILED FALSE CHARGES AGAINST THE LIBRARY.**

{¶38} In its cross-appeal, the Library Board argues that the trial court erred when it affirmed SERB's decision as to the denial of its request for attorney fees and costs without holding a hearing on the matter.

{¶39} The Ohio Supreme Court has consistently held that "Ohio has long adhered to the 'American Rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the

costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶7. Nevertheless, there are certain exceptions to this rule. For example, "[a]ttorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing part to pay the prevailing party's attorney fees, * * * or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant * * * ." Id. Overall, an award of attorney fees lies within the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion. *Fahey Banking Co. v. Rees Ents., Inc.*, 3d Dist. No. 9-09-40, 2010-Ohio-4172, ¶26, citing *Bittner v. TriCounty Toyota, Inc.* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464. Again, an abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

{¶40} In this particular case, the Library Board requested attorney fees from the beginning of the ULP charge proceedings. The ALJ specifically found that "[a]lthough attorney fees may be requested in certain administrative proceedings pursuant to ORC 119.092(B)(1), attorney fees in adjudication hearings conducted by the State Employment Relations Board under Chapter 4117 are specifically precluded pursuant to ORC 119.092(F)(3) [sic]. The Library Board's request for attorney fees should be denied." (ALJ's Proposed Order). Consequently, SERB "agree[d] with the Findings of Fact and Conclusions of Law

set forth in the ALJ's Proposed Order with respect to the issue regarding the Library Board's request for attorney fees," and as a result, it denied the Library Board's request. (SERB Decision). Finally, on appeal to the common pleas court, the Library Board argued that SERB had erred in denying its request for attorney fees; nevertheless, the trial court ultimately affirmed SERB's decision denying the Library Board's request for attorney fees. (July 15, 2010 JE).

{¶41} Now on appeal, the Library Board argues that the trial court erred in affirming SERB's decision to deny its request for attorney fees without holding an evidentiary hearing. In support of its position, the Library Board cites to a number of statutory provisions, civil rules, and general propositions of law. However, while the Library Board cites to other statutory provisions, as the ALJ noted in its Proposed Order, R.C. 119.092 specifically addresses the issue of attorney fees by certain prevailing parties in administrative proceedings, and in pertinent part states:

> **(B)(1) Except as provided in divisions (B)(2) and (F) of this section, if an agency conducts an adjudication hearing under this chapter, the prevailing eligible party is entitled, upon filing a motion in accordance with this division, to compensation for fees incurred by that party in connection with the hearing. A prevailing eligible party that desires an award of compensation for fees shall file a motion requesting the award with the agency within thirty days after the date that the order of the agency is entered in its journal. \* \* \***
> **(F) The provisions of this section** *do not* **apply when any of the following circumstances are involved:**

**(4) An adjudication hearing was conducted by the state personnel board of review pursuant to authority conferred by section 124.03 of the Revised Code, or by the *state employment relations board pursuant to authority conferred by Chapter 4117. of the Revised Code.***

R.C. 119.092(B)(1), (F)(4) (emphasis added). Here, there is a statutory provision governing the award of attorney fees involving SERB proceedings, and pursuant to R.C. 119.092(F)(4) those fees could not be provided. See *Carruthers v. O'Connor* (1997), 121 Ohio App.3d 39, 43, 698 N.E.2d 1033. Thus, we find that the trial court did not err in affirming SERB's decision denying its request for attorney fees without holding an evidentiary hearing.

{¶42} Nevertheless, the Library Board still argues that it should have been awarded attorney fees because the Union acted in bad faith when it knowingly filed the ULP charge against the Library Board for failing to sign and execute the successor agreement despite the fact that it had known the TA had been rejected back at the December 19, 2006 meeting. Even if the trial court *could have* granted the award on the basis that the Union acted in bad faith, we do not believe that the trial court abused its discretion in denying the Library Board's request for attorney fees. While the Library Board cites to several pieces of evidence that it claims clearly indicate that the TA had been rejected and that the Union had known that the TA had been rejected, as the Library Board acknowledges in its cross-appellant's brief, bad faith is defined, in part, as maintaining an action with "a

-23-

dishonest purpose, moral obliquity, conscious wrongdoing." *Grine ex rel. Grine v. Sylvania Schs. Bd. Of Educ.*, 6[th] Dist. No. L-06-1314, 2008-Ohio-1562, ¶29. After reviewing the record, we fail to see how the Union's actions constituted bad faith. Even though we affirmed the trial court's decision above, we acknowledge that there was certainly a viable legal question as to whether the TA had been rejected by the Library Board, and therefore, whether the Library Board committed an unfair labor practice by failing to sign and execute the successor agreement. Furthermore, we note that SERB's decision finding that the Library Board had committed an unfair labor practice when it denied union members access to a meeting room at the library was not appealed by the Library Board to the trial court, and thus, that ULP finding remains in force. Consequently, we cannot say that the Union's filing of the ULP against the Library Board was committed in bad faith, or that the trial court abused its discretion in affirming SERB's decision that denied the Library Board's request for fees and costs.

{¶43} The Library Board's assignment of error is, therefore, overruled.

{¶44} Having found no error prejudicial to the appellants or cross-appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**FRENCH, J., concurs.**

-24-

Case No. 1-10-51

**\*\*  Honorable Judge Judith L. French sitting by assignment from the Tenth Appellate District.**

**/jlr**

**ROGERS, P.J., DISSENTS:**

{¶45} I concur with the resolution of the cross-appeal filed by the Library Board.  However, I dissent from the majority's logic and conclusion on the assignment of error filed by the State Employment Relations Board and OAPSE and would reverse the judgment of the trial court.

{¶46} At the December 19, 2006 meeting of the Library Board a motion was offered to "accept the presented contract except for the fair share provision." (Joint Ex. 2).  The motion carried as made without amendment.  Further, the minutes of the meeting reflected that "the Board accepted the collective bargaining unit's position except for the fair share clause."  (Joint Ex. 3).  The majority takes great pains to relate facts subsequent to the vote of the Library Board and concludes that the trial court did not abuse its discretion in considering those facts and finding that "the Board rejected the contract *because of* the unsatisfactory provision and OAPSE acknowledged this rejection by its subsequent actions." (July 15, 2010 JE at 6-7) (emphasis in original).

-25-

**{¶47}** I would first note that the facts material to this appeal are the acts of the Library Board and its action on the proposed contract. While there may be many other facts contained within the record, most are subsequent to the Library Board's action, and most by the Union. Secondly, neither the Union nor the trial court has the authority to change the language of the motion acted upon by the Library Board, and a later comment by the movant has no effect on the motion as passed. Clearly the trial court has chosen to rewrite the motion passed by the Library Board and has replaced the words *except for* with the words *because of* in order to reach the desired result of a rejection of the entire contract.

**{¶48}** It is my opinion that the Library Board is bound by its motion and the official minutes of its meeting. The Library Board voted to "accept the presented contract *except for* the fair share provision." (Joint Ex. 2). The minutes reflecting this language were subsequently approved without amendment or correction and stand as the only action taken by the Library Board on the proposed contract. The statute is clear and unambiguous and requires that "the legislative body must approve or reject the submission as a whole * * *," which it obviously failed to do. R. C. 4117.10(B). I would, therefore, find that the trial court abused its discretion in altering the Library Board's approved language to reach a result different from that which was approved by the Library Board and I would reverse the judgment of the trial court on this issue.