[Cite as *Rayco Mfg., Inc. v Murphy, Rogers, Sloss & Gambel*, 2019-Ohio-3756.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

RAYCO MANUFACTURING, INC.,    :

      Plaintiff-Appellant/    :
      Cross-Appellee,

          :      No. 106714

      v.    :

MURPHY, ROGERS, SLOSS &    :
GAMBEL, A PROFESSIONAL LAW    :
CORPORATION, ET AL.,

          :
      Defendants-Appellees/    :
      Cross-Appellants.    :

---

## EN BANC DECISION AND JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED
IN PART; REMANDED
**RELEASED AND JOURNALIZED:** September 19, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-13-815844

---

## *Appearances:*

Kehoe & Associates, L.L.C., Robert D. Kehoe, and Kevin P.
Shannon; Critchfield, Critchfield & Johnston, Ltd., J.
Douglas Drushal, Steven J. Shrock, and Andrew P. Lycans,
*for appellant/cross-appellee.*

Baker Hostetler, Ernest E. Vargo, and Michael E.
Mumford, *for appellees/cross-appellants* Murphy,
Rogers, Sloss & Gambel, a Professional Law Corporation,
Peter B. Sloss, Gary J. Gambel, Robert H. Murphy, and

Donald R. Wing.

Gallagher Sharp L.L.P., Timothy T. Brick and Steven D. Strang, *for appellees/cross-appellants* Cavitch, Familo & Durkin Co., L.P.A., Douglas A. DiPalma, Michael C. Cohan, and Eric J. Weiss.

EILEEN A. GALLAGHER, J.:

{¶ 1} Pursuant to App.R. 26, Loc.App.R. 26, and *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008-Ohio-4914, 896 N.E.2d 672, the en banc court determined that a conflict existed between (1) the panel decision in this case, which followed our prior decision in *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318 (8th Dist.), and (2) our prior decisions in *R.C.H. Co. v. Classic Car Auto Body & Frame, Inc.*, 8th Dist. Cuyahoga No. 83697, 2004-Ohio-6852, and *Mayfran Internatl. v. May Conveyor, Inc.*, 8th Dist. Cuyahoga No. 62913, 1993 Ohio App. LEXIS 3511 (July 15, 1993), regarding whether attorney fees incurred as a result of a motion to enforce a settlement agreement are recoverable as compensatory damages.

{¶ 2} In this case, plaintiff-appellant/cross-appellee Rayco Manufacturing, Inc. ("Rayco") appeals from the trial court's decision granting defendants-appellees/cross-appellants' (collectively, "appellees")[1] motion to enforce a settlement agreement that resolved legal malpractice claims Rayco had filed against

---

[1] Appellees consist of Murphy, Rogers, Sloss & Gambel, a Professional Law Corporation, Peter B. Sloss, Gary J. Gambel, Robert H. Murphy, and Donald R. Wing (collectively, "Murphy") and Cavitch, Familo & Durkin Co., L.P.A., Douglas A. DiPalma, Michael C. Cohan and Eric J. Weiss (collectively, "Cavitch").

appellees.  Rayco contends that the trial court erred in finding that there was an enforceable settlement agreement.  Appellees cross-appeal and contend that the trial court erred in denying their request to recover the attorney fees they incurred to enforce the settlement agreement.  To secure and maintain uniformity of decisions within the district, we vacate the panel decision issued on November 29, 2018, *Rayco Mfg. Inc. v. Murphy, Rogers, Sloss & Gambel*, 8th Dist. Cuyahoga No. 106714, 2018-Ohio-4782, consider appellees' cross-assignment of error en banc and issue this decision as the final decision in this appeal.

{¶ 3}  This opinion is divided into two parts: (1) the decision of the en banc court and (2) the decision of the merit panel.  The decision of the en banc court is limited to analysis and resolution of the issue raised in appellees' cross-assignment of error regarding whether attorney fees incurred as a result of a motion to enforce a settlement agreement are recoverable as compensatory damages.  The merit panel reissues the original panel decision with respect to Rayco's three assignments of error, which is unaffected by this en banc review, and addresses appellees' cross-assignment of error in light of the en banc court's decision.

**DECISION OF THE EN BANC COURT:**

{¶ 4}  The issue to be considered by the en banc court has been framed as follows: "Are attorney fees incurred as a result of a motion to enforce a settlement agreement recoverable as compensatory damages?"  Upon en banc review, we hold that attorney fees can be awarded as compensatory damages to the prevailing party

on a motion to enforce a settlement agreement when the attorney fees are incurred as a direct result of a breach of the settlement agreement.

{¶ 5} Ohio follows the "American Rule," which provides that a prevailing party in a civil action may not generally recover its attorney fees as part of the "costs of litigation" unless attorney fees are provided for by statute, the nonprevailing party acts in bad faith or there is an enforceable contract that "specifically provides for the losing party to pay the prevailing party's attorney fees." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7.

{¶ 6} In *Berry v. Lupica*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, this court held that, notwithstanding the American Rule, a party was entitled to recover its attorney fees as compensatory damages when the fees were incurred as a direct result of the breach of a settlement agreement. In that case, Berry filed suit against his supervisor and employer, Wachovia Securities ("Wachovia"), alleging that Wachovia breached an agreement to pay the full amount of Berry's share of an arbitration award that had been entered against Berry in an arbitration between Berry and his former employer, Merrill Lynch. *Id.* at ¶ 1. The arbitration panel awarded Merrill Lynch $250,000 on its claims against Berry and awarded Berry $125,000 on his claim against Merrill Lynch. *Id.* at ¶ 2. Wachovia paid the $250,000 judgment against Berry. *Id.* at ¶ 3. Berry endorsed the $125,000 check he received from Merrill Lynch and gave it to his Wachovia branch manager with a note requesting that the check be placed on deposit "to offset the interest due on our contract" and indicating that "[t]he $125,000 is to be returned on demand."

*Id.* at ¶ 3-4. The check was deposited into a Wachovia account dedicated to legal settlements. Berry later asked to have the check returned to him, but Wachovia refused to return it. *Id.* at ¶ 5. Berry filed suit, alleging that Wachovia had breached an agreement to hold Berry's Merrill Lynch proceeds and produce them on demand; Wachovia filed a counterclaim, alleging that Berry had breached a settlement agreement that he would reimburse Wachovia for certain of the amounts it had paid to Merrill Lynch in satisfaction of the arbitration award. *Id.* at ¶ 1, 6. Wachovia sought to recover as damages the attorney fees it expended or would be required to expend to enforce the settlement agreement. *Id.* at ¶ 6.

{¶ 7} The jury found against Berry on all of his claims and in favor of Wachovia on its counterclaim; it awarded Wachovia $432,000 in damages for the attorney fees Wachovia expended in enforcing the settlement agreement. *Id.* at ¶ 8.

{¶ 8} Berry appealed to this court, asserting, among other arguments, that the award of attorney fees to Wachovia violated the American Rule. *Id.* at ¶ 18-19. This court disagreed. The court held that Berry had breached the settlement agreement when he filed suit against Wachovia, seeking the return of the $125,000. *Id.* at ¶ 15. The court further held that the attorney fees Wachovia incurred to enforce the settlement agreement were recoverable as compensatory damages resulting from Berry's breach of their agreement. *Id.* at ¶ 19-20. As the court explained:

> Ohio adheres to the rule that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396,

at ¶ 7. However, attorney fees are allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement. *See Raymond J. Schaefer, Inc. v. Pytlik*, 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 34; *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 10. The rationale behind the exception for allowing attorney fees expended as a result of enforcing a settlement agreement is that "any fees incurred after the breach of the settlement agreement were relevant to the determination of compensatory damages, including those fees [a party was] 'forced' to incur by filing the action." *Tejada-Hercules* at ¶ 10.

The legal fees awarded in this case were the measure of compensatory damages directly related to Wachovia's need to enforce the settlement agreement. The court did not err by awarding Wachovia its attorney fees as compensatory damages.

*Id.* at ¶ 19-20;[2] *see also Shelly Co. v. Karas Properties, Inc.*, 8th Dist. Cuyahoga No. 98039, 2012-Ohio-5416, ¶ 41 (citing *Berry* and observing that "[c]ourts often award attorney fees incurred after the breach of a settlement agreement because 'when a party breaches a settlement agreement to end litigation and the breach causes a party to incur attorney fees in continuing litigation, those fees are recoverable as compensatory damages in a breach of settlement claim,'" but ultimately concluding that *Berry* did not apply because the breach of contract claim at issue did not involve a settlement agreement), quoting *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000).

---

[2] Because it found the jury's damages award to be "plainly excessive," the court gave Wachovia the option of accepting a remittitur of the damages award to $133,691 — the amount that Wachovia requested and proved at trial — or a new trial. *Id.* at ¶ 44, 46.

{¶ 9} In *Mayfran Internatl. v. May Conveyor, Inc.*, 8th Dist. Cuyahoga No. 62913, 1993 Ohio App. LEXIS 3511, this court held that a party who prevailed on a motion to enforce a settlement agreement was not entitled to recover the attorney fees it incurred to enforce the agreement as compensatory damages because there had been no finding that the other party had acted in bad faith. In that case, Mayfran International, Inc. ("Mayfran") sued May Conveyor, Inc. and several related defendants (collectively, "May Conveyor"), asserting various claims relating to the alleged misappropriation of trade secrets. *Id.* at 2-3. Prior to trial, the parties reached an alleged settlement. *Id.* at 2-4. After execution of a handwritten settlement agreement, but before execution of a final "definitive agreement," a dispute arose as to the meaning of one of the terms of the alleged settlement, and Mayfran filed a motion to enforce the settlement agreement. *Id.* at 3-8. After a series of hearings, the trial court determined that the parties had entered into an enforceable settlement agreement and that May Conveyor had breached that agreement. It awarded Mayfran lost profits and its attorney fees as compensatory damages for breach of the settlement agreement. *Id.* at 8-9. May Conveyor appealed. On appeal, this court reversed the attorney fee award, concluding that the attorney fee award was "not proper" because there had been no finding that May Conveyor acted in bad faith and, "[a]bsent a statutory provision, a prevailing party is not entitled to an award of attorney fees unless the party against whom the fees are taxed was found to have acted in bad faith." *Id.* at 15, citing *State ex rel. Kabatek v. Stackhouse*, 6 Ohio St.3d 55, 451 N.E.2d 248 (1983).

{¶ 10} In *R.C.H. Co. v. Classic Car Auto Body & Frame, Inc.*, 8th Dist. Cuyahoga No. 83697, 2004-Ohio-6852, the parties reached a settlement agreement in a lease dispute. *Id.* at ¶ 2-5. The plaintiffs thereafter filed an "amended second cause of action," alleging that the defendants had breached the settlement agreement. *Id.* at ¶ 7. The trial court entered judgment for the plaintiffs for rent due, utilities and attorney fees. *Id.* at ¶ 8. On appeal, this court reversed the attorney fee award based on the American Rule, noting that there was no contractual or statutory basis for an award of attorney fees and no finding that the defendants had acted in bad faith. *Id.* at ¶ 10-11.

{¶ 11} We follow *Berry* and hold that attorney fees can be awarded as compensatory damages to the prevailing party on a motion to enforce a settlement agreement when the fees are incurred as a direct result of a breach of the settlement agreement.

{¶ 12} Compensatory damages are awarded to a party to compensate it for damages, injury or other loss caused by another party. The object of compensatory damages is to make the aggrieved party whole, i.e., to put the party in as good a position as the party would have been had the agreement at issue been fully performed or the harm not occurred. *See, e.g., Kovach v. Lazzano*, 11th Dist. Geauga No. 1082, 1983 Ohio App. LEXIS 12491, 7 (Aug. 5, 1983) ("Compensatory damages in Ohio have been traditionally defined as the measure of actual loss suffered by the aggrieved party[.] * * * [T]he object of compensatory damages is to make the damaged party whole for the wrong done to him. * * * General compensatory

damages are those which result from the wrongful act and which are traceable to and the necessary result of the act."); *Johnson v. Weiss Furs*, 8th Dist. Cuyahoga No. 76680, 2000 Ohio App. LEXIS 676, 4 (Feb. 24, 2000) ("[T]he purpose of monetary compensatory damages is to put the injured party in the position that he or she would have been in, had the wrong complained of not occurred.").

{¶ 13} When parties settle a case, the end of litigation is an essential component of the consideration exchanged as part of the settlement. A party may pay more (or accept less) to resolve a case by settlement than the party believes it would have to pay (or would recover) if the dispute were to be fully litigated in exchange for (1) the certainty of result and (2) peace, i.e., an end to the time and expense associated with litigating the parties' dispute. Where a party breaches a settlement agreement and the breach causes the nonbreaching party to incur attorney fees through continued litigation to enforce the settlement agreement, the nonbreaching party has lost an essential benefit of its bargain. As such, the nonbreaching party is entitled to recover the reasonable attorney fees it incurred in enforcing the settlement agreement — not as part of the "costs of litigation" — but rather, as compensatory damages for the other party's breach of the settlement agreement.

{¶ 14} Courts have long recognized that, notwithstanding the American Rule, a plaintiff may recover attorney fees expended in an action brought by a third party as compensatory damages where the defendant's breach of contract caused the plaintiff to engage in the litigation with the third party. *See, e.g., S & D*

*Mechanical Contrs., Inc. v. Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228, 241, 593 N.E.2d 354 (2d Dist.1991); *see also* Annotation, *Attorneys' Fees Incurred in Litigation with Third Person as Damages in Action for Breach of Contract*, 4 A.L.R.3d 270.

{¶ 15} Because the attorney fees recoverable on a successful motion to enforce a settlement agreement are compensatory damages — rather than "costs of litigation" — the American Rule does not preclude their recovery even where none of the other exceptions to the American Rule applies.

{¶ 16} A number of other Ohio appellate districts have reached the same conclusion. *See, e.g., Brown v. Spitzer Chevrolet Co.*, 5th Dist. Stark No. 2012 CA 00105, 2012-Ohio-5623, ¶ 19-21 ("attorney fees are allowed as compensatory damages when the fees are incurred as a direct result of the breach of a settlement agreement"); *Raymond J. Schaefer, Inc. v. Pytlik,* 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 33-34 (appellee entitled to an award of attorney fees as compensatory damages "because those fees were incurred as a direct result of appellants' breach of the settlement agreement"); *Myron C. Wehr Properties, L.L.C. v. Petraglia*, 2016-Ohio-3126, 65 N.E.3d 242, ¶ 36, 38 (7th Dist.) ("[A]ttorney fees may be awarded where it can be established they were the result of the offending party's breach of the settlement agreement and sought as compensatory damages and not merely as costs of the action."); *Tejada-Hercules v. State Auto. Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 9-11 (recognizing "a distinction between cases in which attorney fees are awarded as costs and those in which the

fees are awarded as part of the aggrieved party's damages" and that "a party may receive attorney fees resulting from the other party's breach of the settlement agreement as a form of compensatory damages"); *Shanker*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391, at 11-15 ("Because defendant's attorney fees are attributable to and were incurred as the result of plaintiffs' breach of the settlement agreement, defendant is entitled to recover those fees in order to make whole and compensate him for losses caused by plaintiffs' breach."); *see also Rohrer Corp. v. Dane Elec Corp. USA*, 482 Fed.Appx. 113, 115-117 (6th Cir.2012) ("Ohio law allows a court to award attorney's fees as compensatory damages when a party's breach of a settlement agreement makes litigation necessary, even where none of the exceptions to the American Rule have been shown."); *Wilson v. Prime Source Healthcare of Ohio*, N.D.Ohio No. 1:16-cv-1298, 2018 U.S. Dist. LEXIS 34445, 8-9 (Mar. 2, 2018) (where a settling party forces the other party to litigate a motion to enforce the settlement, the party forced to enforce the settlement agreement is "entitled to attorney's fees stemming from this additional litigation as compensatory damages").

{¶ 17} Allowing the recovery of attorney fees as compensatory damages on a motion to enforce a settlement agreement is consistent with the strong public policy that exists in encouraging settlements and enforcing settlement agreements. *See, e.g., Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 38, 285 N.E.2d 324 (1972) ("'The law favors the resolution of controversies and uncertainties through compromise and settlement rather than through litigation. * * * The resolution of

controversies * * * by means of compromise and settlement * * * results in a saving of time for the parties, the lawyers, and the courts, and it is thus advantageous to judicial administration, and, in turn, to government as a whole."), quoting 15 American Jurisprudence 2d, Compromise and Settlement, Section 4 at 938; *Turoczy Bonding Co. v. Mitchell*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, ¶ 16 ("Settlement agreements are generally favored in the law."); *Ortiz v. United States Fid. & Guar. Co.*, 8th Dist. Cuyahoga No. 85966, 2005-Ohio-5982, ¶ 21 ("[P]ublic policy favors settlements. Without such, it would be difficult for parties to attempt the amicable adjustment or compromise of disputes. Moreover, when parties agree to settle cases, litigation is avoided, costs of litigation are contained, and the legal system is relieved of the burden of resolving the dispute with the resulting effect of alleviating an already overcrowded docket. Perhaps the most salubrious aspect of settlement is its finality; the conflict is resolved and the appellate process is avoided.").

{¶ 18} Were it otherwise, a party who had a "change of heart" regarding a settlement agreement would have nothing to lose by refusing to comply with the settlement agreement, challenging the existence or enforceability of the settlement agreement, and continuing to litigate the matter, notwithstanding the harm to the nonbreaching party.[3] At worst, i.e., if the court were to rule against the breaching

---

[3] Although an exception exists under the American Rule, permitting the recovery of attorney fees as litigation costs where the nonprevailing party acts in "bad faith," this is a high bar for the recovery of attorney fees. *See, e.g., Covenant Dove Holding Co., L.L.C. v. Mariner Health Care, Inc.*, 1st Dist. Hamilton No. C-120878, 2013-Ohio-3824, ¶ 7 ("'Bad faith' is more than bad judgment or negligence. * * * It implies a dishonest

party and enforce the settlement agreement, the breaching party would simply be required to comply with the settlement agreement as originally agreed. Allowing parties to recover attorney fees incurred to enforce a settlement agreement as compensatory damages "encourages parties to comply with the terms of their settlement agreements, lest they put themselves at risk of paying the nonbreaching parties' attorney fees" incurred in enforcing the settlement agreement. *Tejada-Hercules*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, at ¶ 22.

{¶ 19} Although in *Berry*, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, the nonbreaching party sought enforcement of a settlement agreement in a separate action rather than by filing a motion to enforce the settlement agreement, we see no reason that a different rule should apply depending on how a party seeks to enforce a settlement agreement. *See, e.g., Wilson*, N.D., Ohio No.1:16-CV-1298, 2018 U.S. Dist. LEXIS 34445, at 8-9 ("Attorney's fees as compensatory damages are available whether a party files a separate breach of contract suit or a motion to enforce settlement before the original trial court."). In both instances, a party seeking to enforce a settlement agreement is subjected to additional or continued litigation as a result of the other party's attempted repudiation of a settlement agreement. A nonbreaching party should not be compelled to initiate a

purpose, moral obliquity, conscious wrongdoing, breach of a known duty due to ulterior motive, ill will comparable to fraud, or an actual intent to mislead or deceive another."); *see also LEH Properties v. Pheasant Run Assn.*, 9th Dist. Lorain No. 1-CA009780, 2011-Ohio-516, ¶ 23. Thus, a party could not recover attorney fees under the bad faith exception to the American Rule merely because a party had a "change of heart" regarding a settlement or in the ordinary case where a party simply fails to comply with the terms of a settlement agreement.

separate action and file and serve a new complaint (or seek leave to amend a previously filed complaint), incurring even greater expense and further wasting limited judicial resources, in order to recover its compensatory damages incurred in enforcing a settlement agreement.

{¶ 20} Accordingly, we hold that attorney fees can be awarded as compensatory damages on a motion to enforce a settlement agreement when the fees are incurred as a direct result of the breach of a settlement agreement.

{¶ 21} To the extent *R.C.H. Co. v. Classic Car Auto Body & Frame, Inc.*, 8th Dist. Cuyahoga No. 83697, 2004-Ohio-6852, and *Mayfran Internatl. v. May Conveyor, Inc.*, 8th Dist. Cuyahoga No. 62913, 1993 Ohio App. LEXIS 3511 (July 15, 1993), are inconsistent with this decision of the en banc court, we overrule them.

_____
EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J.; MARY J. BOYLE, FRANK D. CELEBREZZE, JR., RAYMOND C. HEADEN, LARRY A. JONES, SR., and KATHLEEN ANN KEOUGH, JJ., CONCUR;

MICHELLE J. SHEEHAN, J., DISSENTS WITH SEPARATE OPINION, with PATRICIA ANN BLACKMON, EILEEN T. GALLAGHER, SEAN C. GALLAGHER, and ANITA LASTER MAYS, JJ.

MICHELLE J. SHEEHAN, J., DISSENTING:

{¶ 22} Respectfully, I dissent. "Ohio has long adhered to the 'American [R]ule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank*

*One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7, citing *Nottingdale Homeowners' Assn., Inc. v. Darby*, 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702 (1987), and *State ex rel. Beebe v. Cowley*, 116 Ohio St. 377, 156 N.E. 214 (1927).

{¶ 23} The United States Supreme Court has repeatedly recognized this bedrock principle and recently affirmed that "the American Rule has roots in our common law reaching back to at least the 18th Century * * *." *Baker Botts L.L.P. v. ASARCO, L.L.C.*, 576 U.S. ___, 135 S.Ct. 2158, 192 L.Ed.2d 208 (2015) (refusing to create a "judicial exception" to the American Rule to allow recovery of attorney fees for work performed in defending a fee application in Bankruptcy Court per Section 330(a)(1) of the Bankruptcy Code).

{¶ 24} There are three well-established exceptions to the rule in Ohio. Attorney fees may be awarded if (1) a statute creates a duty to pay fees,[4] (2) the losing party has acted in bad faith, or (3) the parties contract to shift fees. *Wilborn* at ¶ 7. *See also Pegan v. Crawmer*, 79 Ohio St.3d 155, 156, 679 N.E.2d 1129 (1997); *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 66 Ohio St.3d 75, 77, 609 N.E.2d 152 (1993); *State ex rel. Kabatek v. Stackhouse*, 6 Ohio St.3d 55, 451 N.E.2d 248 (1983); *Nottingdale*; *State ex rel. Crockett v. Robinson*, 67 Ohio St.2d 363, 369, 423 N.E.2d

---

[4] For example, R.C. 2335.39 authorizes an award of attorney fees to a prevailing party where an action by the state agency is not substantially justified. *Collyer v. Broadview Dev. Ctr.*, 81 Ohio App.3d 445, 611 N.E.2d 390 (10th Dist.1992). R.C. 2323.51 authorizes an award of attorney fees to a party to a civil action who is adversely affected by another party's frivolous conduct. *See Moore v. Cleveland,* 8th Dist. Cuyahoga No. 83070, 2004-Ohio-360*.*

1099 (1981); *Sorin v. Bd. of Edn.*, 46 Ohio St.2d 177, 347 N.E.2d 527 (1976); and *State ex rel. Grosser v. Boy,* 46 Ohio St.2d 184, 347 N.E.2d 539 (1976).

{¶ 25} The fourth exception endorsed by the court today appears to have originated in 2000 when a sister appellate court deviated from the American Rule to allow the recovery of attorney fees as compensatory damages in *Shanker v. Columbus Warehouse Ltd. Partnership*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391 (June 6, 2000). In *Shanker*, the parties reached an oral settlement agreement in court. Plaintiff, however, subsequently submitted a draft settlement agreement with a new term not in the original settlement agreement. Defendant filed a motion to enforce the settlement agreement the parties had reached in court. The trial court enforced the in-court settlement, and plaintiff appealed the trial court's decision, which was affirmed on appeal. After the appeal, defendant refused to pay the settlement proceeds because plaintiff had continued to litigate after the parties had settled, causing defendant to incur additional attorney fees to defend the settlement. Plaintiff then filed a new lawsuit to enforce the settlement agreement. Defendant counterclaimed, claiming plaintiff breached the settlement by continuing to litigate and therefore defendant should be awarded attorney fees defending the settlement agreement in the first litigation.

{¶ 26} The trial court concluded both parties breached the settlement agreement and awarded defendant attorney fees incurred defending the settlement agreement. On appeal, the Tenth District affirmed the trial court's decision, reasoning that the attorney fees were sought as compensatory damages flowing from

plaintiff's breach of the settlement agreement. The court of appeals also held plaintiff was entitled to attorney fees for defendant's own breach of the settlement and remanded the case.

{¶ 27} Unfortunately, our sister districts and now this court applied the broad proposition in *Shanker* that attorney fees are recoverable for breach of a settlement agreement without any authorization or guidance from the Ohio Supreme Court or the legislature. In other words, appellate courts have now carved out a narrow exception and placed settlement agreements on a pedestal, above all other types of contracts. With a stroke of a pen, appellate courts now allow any party that disputes a settlement agreement and succeeds to gain a windfall in attorney fees and in effect encourages pursuit of further litigation over any minor breach or discrepancy involving a settlement agreement.

{¶ 28} A settlement agreement is a contract — one designed to terminate a claim by preventing or ending litigation. *In re All Kelley & Ferraro Asbestos Cases*, 104 Ohio St.3d 605, 2004-Ohio-7104, 821 N.E.2d 159, ¶ 28. As a contract, a settlement agreement is governed by principles of contract law. *Rulli v. Fan Company*, 79 Ohio St.3d 374, 683 N.E.2d 337 (1997).

{¶ 29} In Ohio, attorney fees are generally not recoverable as costs of litigation in a contract action. *Walton Commercial Ent. v. Assns., Conventions, Tradeshows, Inc.*, 71 Ohio App.3d 109, 115, 593 N.E.2d 64 (10th Dist.1990), citing *Allen v. Std. Oil Co.*, 2 Ohio St.3d 122, 443 N.E.2d 497 (1982). However, the parties to a contract may provide for attorney fees to be awarded to the prevailing party.

The American Rule allows for the shifting of attorney fees in this situation as one of the three well-settled exceptions. *See Nottingdale,* 33 Ohio St.3d at 36, 514 N.E.2d 702 (when the right to recover attorney fees arises from a contractual term, the rationale permitting recovery is the parties' fundamental right to contract freely).

{¶ 30} Although public policy and the law favor the resolution of controversies and uncertainties through settlement agreements rather than litigation, *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36, 285 N.E.2d 324 (1972), there is no compelling reason to elevate a settlement agreement above all other contracts for purposes of recovery of attorney fees as damages. As in any contract, it is entirely foreseeable that a settlement agreement may be breached or its terms may be disputed. The parties are free — as they often do — to negotiate and provide for an award of attorney fees in the settlement agreement itself in the event of a breach. In other words, the parties themselves could easily contract for an award of attorney fees to the prevailing party in the event of further litigation necessitated by an allegation of a breach of the settlement agreement. The parties' failure to negotiate and incorporate such a term in their agreement does not warrant the courts to impose such a rule or deviate from the American Rule. As this court stated in *R.C.H. Co. v. Classic Car Auto Body & Frame, Inc.*, 8th Dist. Cuyahoga No. 83697, 2004-Ohio-6852, ¶ 11, attorney fees are allowable as damages "where the parties have bargained for this result."

{¶ 31} The Tenth District reasoned that the attorney fees incurred as a result of enforcing a settlement agreement are recoverable because they constitute

compensatory damages flowing from a party's breach of the settlement agreement. *Shanker*, 10th Dist. Franklin No. 99AP-772, 2000 Ohio App. LEXIS 2391, at 12, and *Tejada-Hercules v. State Auto Ins. Co.*, 10th Dist. Franklin No. 08AP-150, 2008-Ohio-5066, ¶ 9. This, however, can be said of attorney fees in all breach of contract actions. In every breach of contract litigation, the expenditure of attorney fees by the nonbreaching party to enforce the contract is a direct result of the other party's breach; the nonbreaching party is forced to incur attorney fees to enforce the contract. Whether attorney fees are labeled compensatory damages or costs is a distinction without a difference. Attorney fees are attorney fees. Calling them compensatory damages does not change the nature of the fees.

{¶ 32} The majority here notes that compensatory damages are awarded to make the aggrieved party whole — to put the party in the position where the party would have been in had the agreement been fully performed. Again, this can be said of attorney fees in all breach of contract actions. The nonbreaching party can truly be made whole only by recovering the attorney fees incurred as the result of the other party's breach, yet attorney fees are generally not recoverable unless expressly contracted for.

{¶ 33} The trial court in this case recognized the same issue when it held:

Despite its lengthy exegesis on the subject, the *Shanker* court's affirmance of the award of attorney[] fees to a party enforcing a settlement agreement was based only on the fact that the fees were incurred because the agreement was breached. Yet that can be said for any successful plaintiff on a breach of contract claim. Adopting the *Shanker* rationale throughout Ohio would nullify the American rule that each party to a lawsuit is responsible for its own attorney[] fees

unless they agreed otherwise, had a statutory entitlement to fees, or the other side acted in bad faith. Perhaps the abrogation of that rule would be salutary, but that is hardly a policy decision for a discrete three-judge appellate panel — much less a single common pleas judge — to make.

Journal Entry, Dec. 14, 2017.

{¶ 34} Within the parameters of the American Rule, it is traditionally within the sound discretion of the trial court to determine whether attorney fees are warranted under the facts of each case. *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, 879 N.E.2d 765, ¶ 27. *See also Lima Pub. Library Bd. of Trustees v. State Emp. Rels. Bd.*, 3d Dist. Allen No. 1-10-51, 2011-Ohio-1730, ¶ 39. An award of attorney fees should be "fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Wilborn*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, at ¶ 19, fn. 3, citing *Nottingdale,* 33 Ohio St.3d 32, 33-34, 514 N.E.2d 702, at syllabus. A bright-line rule holding that attorney fees are recoverable as compensatory damages in litigation involving an alleged breach of settlement agreement unnecessarily interferes with the trial court's discretionary power in matters of attorney fees and it has procedural consequences. "If the fees are damages, then the availability and amount of such fees have to be determined by the jury." *Christe v. GMS Mgmt. Co.*, 88 Ohio St.3d 376, 378, 726 N.E.2d 497 (2000). However, calculating attorney fee awards requires consideration of the time and labor involved in maintaining the litigation, the novelty and difficulty of the questions presented, the professional skill required to perform the necessary legal services, the reputation of the attorney, and the results

obtained, and consideration of all of these issues is best undertaken by courts rather than juries.  *Id.* at 378-379.

{¶ 35}  One of the important public policy considerations underlying the American Rule is that requiring the parties to pay for their own legal fees encourages and promotes settlement.  Awarding attorney fees to the prevailing party in litigation involving disputes over a settlement agreement, however, encourages more litigation, rather than resolution.  If a party knows they can collect their attorney fees from the other side for a breach of a settlement agreement in an already contentious matter, any alleged breach will be litigated and result with an award of attorney fees likely greater than the original amount in dispute.

{¶ 36} As for a party who merely "had a change of heart" regarding a settlement, this scenario would likely fall under the bad faith exception if the court finds the "change of heart" to be "conscious wrongdoing or a breach of known duty due to ulterior motive."  *See State v. Powell,* 132 Ohio St.3d 233, 2017-Ohio-2577, 71 N.E.2d 865, ¶ 81 (bad faith "imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud").  In any event, the parties can always contract for an award of attorney fees to preclude a "change of heart."

{¶ 37} Ohio is an "American Rule" jurisdiction.  Under the rule, the parties involved in litigation bear their own litigation costs and they are free to alter the effect of the rule contractually.  Absent an express contractual provision, the court can award attorney fees within its discretion if a party breaches a settlement

agreement in bad faith. *Shanker* and its progeny disturb Ohio's long tradition of adhering to the American Rule. I believe this court should continue to apply the American Rule with its well-established exceptions until the Supreme Court of Ohio or the legislature provides otherwise. Respectfully, I dissent.

**DECISION OF THE MERIT PANEL:**

EILEEN A. GALLAGHER, P.J.:

{¶ 38} Rayco appeals from the trial court's decision granting appellees' motion to enforce a settlement agreement that resolved legal malpractice claims Rayco had filed against appellees. Rayco contends that the trial court erred in finding that there was an enforceable settlement agreement. Appellees cross-appeal and contend that the trial court erred in denying their request to recover the attorney fees they incurred to enforce the settlement agreement. For the reasons that follow, we affirm the trial court's decision to the extent that it grants appellees' motion to enforce the settlement agreement, reverse the trial court's decision to the extent that it denies appellees' motion for attorney fees and remand the case for further proceedings.

**Factual Background and Procedural History**

{¶ 39} In October 2013, Rayco filed a complaint against appellees for legal malpractice arising out of appellees' handling of a prior lawsuit Rayco had filed against Deutz Corporation and Deutz AG (collectively, "Deutz") for breach of warranty and other claims arising out of Deutz's sale of engines to Rayco. In that case, summary judgment was granted in favor of Deutz and affirmed by the United States Court of Appeals for the Sixth Circuit.

{¶ 40} In February 2015 and June 2016, the parties attempted to mediate their dispute with the assistance of a retired judge as the mediator. At the second mediation, Rayco authorized the mediator to convey a settlement demand of $3,050,000, in the aggregate, to appellees. At the conclusion of the second mediation, no agreement had been reached but efforts to settle the case continued.

{¶ 41} In July 2016, the mediator issued a written recommendation to the parties, recommending that they settle the case for $2,650,000 in the aggregate. Rayco's counsel advised the mediator that Rayco did not agree with the recommendation and that appellees would have to pay the full $3,050,000 it had demanded to settle the case. In September 2016, with the consent of all parties, the mediator met with Rayco's chief executive, John Bowling, to further discuss the possibility of resolving the case. After the meeting, the mediator continued to have settlement discussions with Rayco and its counsel by telephone.

{¶ 42} In the fall of 2016, several pretrial conferences were cancelled at the parties' request due to ongoing settlement negotiations. During this time period,

one of Rayco's attorneys, Robert Kehoe, had discussions with appellees' counsel in which he reiterated that the only way to settle the case would be to pay Rayco's full settlement demand of $3,050,000. Given the amount of the demand, appellees needed to request additional authority from their insurance carriers to settle the case. To that end, in late 2016, Murphy's counsel and Cavitch's counsel separately requested written settlement demands from Rayco that Murphy and Cavitch could submit to their insurance carriers. In January 2017, Cavitch's counsel emailed Attorney Kehoe inquiring about the status of the "demand letter" from Rayco. Attorney Kehoe replied that he was "working on it."

{¶ 43} On January 26, 2017, Attorney Kehoe sent letters to Murphy's counsel and Cavitch's counsel. He indicated that he was writing "to follow up on the June 23, 2016 mediation and subsequent settlement discussions with [appellees' counsel] and the mediator." He stated that Rayco had authorized the mediator to convey a "firm demand" of $3,050,000 to settle the case and had "made it clear" that "$3,050,000 was an absolute aggregate amount necessary to settle the case." He further indicated that "[w]e have not explored the possibility of resolving Rayco's claims against [the Murphy and Cavitch appellees] independent[ly]" but that there was "enough insurance coverage" for appellees "[i]n combination" to "meet Rayco's demand."

{¶ 44} At a pretrial conference on January 30, 2017, the parties advised the trial court that settlement negotiations were ongoing. A month later, on February

23, 2017, one of Murphy's attorneys, Ernie Vargo, sent an email to Rayco's counsel, with the consent of Cavitch's counsel, stating as follows:

> This is in response to Rayco's offer of settlement as set forth in your letter of January 26, 2017 to me. Counsel for Cavitch indicates that he has received a substantively similar letter on behalf of the Cavitch firm and named attorneys.

> The Murphy firm, Cavitch firm, and named lawyers from each firm accept the collective settlement demand of $3,050,000 in the aggregate. This acceptance is conditioned upon a full release and dismissal and other customary provisions to be negotiated and memorialized in a formal settlement agreement. Defendants agree to provide the initial draft of the written agreement to you for comments. Please expect the draft within 14 days of this email.

> Thank you for your efforts in negotiating this resolution with us.

{¶ 45} Later that day, Attorney Kehoe responded to the email. He left a voicemail message for Attorney Vargo, thanking him and requesting that he return his call, indicating, "I'd like to talk to you briefly about the logistics and I note that you'll take the first cut at the settlement documents and have them in about 14 days, which is fine." The following day, another of Rayco's attorneys, J. Douglas Drushal, emailed Attorney Vargo. He thanked Attorney Vargo for his February 23, 2017 email and stated that "[i]f he has not done so yet, [Attorney Kehoe] will be in touch shortly with how we would like to proceed to finalize things."

{¶ 46} On March 2, 2017, Attorney Drushal emailed appellees' counsel, stating, "I believe we are waiting for the final versions of what your side wants signed in the way of releases, etc. before presenting the package to Rayco. We need to know every detail before we can finalize. Anything you could do to expedite that would be helpful. Thanks."

{¶ 47} On March 7, 2017, Murphy's counsel emailed "defendants' draft settlement agreement and release" to Rayco's counsel. Murphy's counsel also inquired whether the parties should notify the court that they had "an agreement in principle" given that a pretrial conference was scheduled with the trial court for the following day. Attorney Drushal responded: "Agree that we should contact [the] court and say we don't need the conference. I will defer to the rest of you to coordinate that, assuming all others concur." The trial court cancelled the March 8, 2017 pretrial conference at the parties' request.

{¶ 48} On March 10, 2017, Attorney Kehoe forwarded a red-lined version of the settlement agreement "with suggested changes from Plaintiff's counsel" along with a proposed dismissal entry. The suggested changes included a mutual release provision, i.e., in addition to Rayco's release of its claims against Murphy and Cavitch, Murphy and Cavitch would release any claims they had against Rayco, and a provision that the trial court would retain jurisdiction over any disputes related to the settlement agreement. Attorney Kehoe stated: "Kindly review and let us know if [the suggested changes] are acceptable. If so, we will proceed to obtain our client's signature."

{¶ 49} Appellees' counsel made additional changes to the revised settlement agreement circulated by Rayco's counsel and sent a red-lined version of the document to Rayco's counsel on March 16, 2017.[5] On April 4, 2017, Attorney Kehoe

---

[5] All drafts of the settlement agreement exchanged between the parties, including the "final" version of the settlement agreement, included a "costs" provision that stated, "[t]he Parties shall bear their own costs, expenses, and attorney fees in connection with

left a voicemail message for Attorney Vargo. He indicated that "[t]he settlement document itself is fine" and that "[w]e had John [Bowling's] commitment to settle with the number that we agreed upon, but he's being a little bit difficult in getting the document signed."

{¶ 50} Rayco never signed the settlement agreement.

{¶ 51} On June 16, 2017, appellees filed a motion to enforce the settlement agreement. Appellees asserted that the parties had agreed to settle the case on February 23, 2017 but that Rayco refused to sign the settlement agreement. Appellees requested that the court enforce the settlement agreement and award them the attorney fees they incurred to enforce the settlement agreement.

{¶ 52} Rayco opposed the motion. It argued that there was no settlement agreement because, by the time appellees "accepted" the $3,050,000 settlement offer Rayco made at the June 2016 mediation, it had lapsed. Rayco further argued that its counsel's January 26, 2017 letters simply summarized the parties' past settlement positions and indicated Rayco's "willingness to re-open negotiations" and were not settlement offers.

{¶ 53} The trial court held an evidentiary hearing on the motion to enforce the settlement. The hearing was held before an advisory jury, which the trial court

---

this agreement," and a "specific performance" provision that stated, "[t]he Parties agree that, in the event of a breach of the terms of this Agreement, there will be no adequate remedy at law to remedy such breach and, accordingly, the Parties agree that specific performance may be awarded to enforce the terms of this Agreement."

empaneled, sua sponte, to address the issue of "whether the parties entered into a contract to settle the lawsuit."

{¶ 54} Attorney Vargo (one of Murphy's attorneys), Attorney Timothy Brick (one of Cavitch's attorneys), and two of Rayco's attorneys, Attorneys Kehoe and Drushal, testified at the hearing. The parties also submitted a joint stipulation of undisputed facts. The 38 facts to which the parties stipulated detailed the history of the parties' settlement negotiations and included 15 documents created or exchanged by the parties during the course of their settlement negotiations.[6]

{¶ 55} During their testimony, Attorneys Vargo and Brick "walked through" the parties' stipulations and incorporated exhibits. Appellees argued there were at least three potential "offers" and three potential "acceptances" that gave rise to an enforceable settlement agreement. Appellees argued that Rayco's counsel's January 26, 2017 letters to appellees' counsel constituted offers that appellees accepted by means of Attorney Vargo's February 23, 2017 email to Rayco's counsel. They argued that the subsequent conduct of counsel, i.e., exchanging drafts of the settlement agreement, constituted further evidence of the parties' agreement to settle the case. Alternatively, appellees argued that (1) Murphy's counsel's February 23, 2017 email constituted a counteroffer to settle the case for $3,050,000 that Rayco accepted (a)

---

[6] Prior to the hearing, the parties filed a joint motion for leave to file a stipulation of undisputed facts regarding appellees' motion to enforce the settlement agreement. In their joint motion, the parties asserted that there were no disputed questions of material fact relevant to the motion to enforce the settlement agreement, that an advisory jury was no longer necessary and that "[t]he sole remaining question is whether the undisputed facts give rise to a binding settlement agreement as a matter of law." The trial court denied the motion.

by means of Attorney Kehoe's voicemail message to Attorney Vargo later that day or (b) by means of the email Attorney Drushal sent to Attorney Vargo the following day or (2) Rayco's counsel submission of the revised settlement agreement (which included mutual releases and other changes) to appellees' counsel on March 10, 2017 constituted an offer to settle the case for $3,050,000 that appellees accepted on March 16, 2017 when they made additional changes to the revised settlement agreement and returned the document to Rayco's counsel.

{¶ 56} Attorney Kehoe testified upon cross-examination. He acknowledged the "tru[th] and accura[cy]" of the facts set forth in the parties' joint stipulation and confirmed that he was authorized to enter into the stipulation on behalf of Rayco. He indicated that he sent the January 26, 2017 letters to appellees' counsel in response to their request for a written settlement demand and that Rayco had authorized him to send the letters. He further acknowledged receipt of Attorney Vargo's February 23, 2017 email, indicating that appellees agreed to pay the amount Rayco had demanded ($3,050,000 in the aggregate), that he understood the email was sent on behalf of both Murphy and Cavitch and that he and appellees' counsel thereafter exchanged various emails congratulating and thanking one another for "working so hard to get this done." Attorney Kehoe testified that after he received Attorney Vargo's February 23, 2017 email, he reported the settlement to Bowling. He indicated that Bowling accepted his congratulations on the settlement and did not dispute that the case had been settled or object to the settlement at that time. He further testified, however, that when Bowling was presented with the settlement

documents, he was "unwilling to sign" them. According to Attorney Kehoe, Bowling told him that he believed the settlement of the lawsuit was like a real estate transaction, i.e., that the deal was not finalized and there was no settlement until he signed the written settlement agreement. Attorney Kehoe further testified, however, that he had fully intended to consummate a settlement through his communications with appellees' counsel.

{¶ 57} Attorney Drushal testified that he interpreted his co-counsel's January 26, 2017 letters not as a "renewed demand" or "offer that could be accepted" but rather, as a "recitation of the history of what had happened" and "as seeking an offer from the lawyers, law firms, and their insurance company which would be presented to Mr. Bowling to see if he would accept it at that point." He further testified that, as he communicated in his March 2, 2017 email, in his view, "everybody needed to sign off on" the final version of the agreement before the parties had a settlement.

{¶ 58} After the parties concluded their presentation of evidence and gave closing arguments, the advisory jury deliberated. Six interrogatories were submitted to the advisory jury. The advisory jury answered interrogatories indicating that the parties had entered into a settlement agreement and signed a verdict form in favor of appellees and against Rayco on the motion to enforce the settlement agreement.[7]

---

[7] One of the trial court's November 9, 2017 journal entries states: "The jury answered interrogatories to the effect that the parties did enter into an enforceable settlement agreement and signed a verdict form in favor of the defendants." The

**{¶ 59}** After dismissing the jury, the trial court stated that "[b]ased upon the evidence hearing and having taken into consideration or under consideration the jury's verdict in this case, I find that the motion to enforce the settlement is well taken."

**{¶ 60}** On December 14, 2017, the trial court issued a written decision granting appellees' motion to enforce the settlement agreement. The trial court determined, "[b]ased upon all the evidence," that the parties had "a contract to settle with terms clear and enforceable" as a result of Rayco's "acceptance" of appellees' February 23, 2017 "offer" to settle the case for $3,050,000. As the trial court explained:

> In this case, on February 23 the defendants unambiguously offered the plaintiff a settlement of $3,050,000 in exchange for a dismissal of all claims against all defendants. The plaintiff — through counsel but with the authority of Rayco's chief executive — accepted that offer as shown by trial counsel's February 23 voicemail and as further evidenced by: 1) plaintiff's co-counsel's email that same day, 2) the plaintiff's March 10 proposed release of all claims leaving the figure of $3,050,000 undisturbed and 3) the plaintiff's confirmation on April 4 that "the settlement document (release dated March 16 and drafted by the defendants) is fine" and that Bowling had previously accepted the proffered settlement.

**{¶ 61}** The trial court ordered the parties to "conclude the settlement under the terms outlined in the March 16, 2017, written settlement agreement." The trial court, however, denied appellees' request to recover the attorney fees they had

interrogatories submitted to the advisory jury, the advisory jury's answers to those interrogatories and the jury's signed verdict form were not included in the record this court received on appeal. The jury's answers to the interrogatories were not read into the record. Accordingly, we do not know what specific findings were made by the advisory jury.

incurred to enforce the settlement agreement based on the American Rule. Because the parties did not agree to shift fees, because there was no applicable statute providing for the recovery of attorney fees and because there was "insufficient evidence of the reasons for, and nature of, Bowling's resistance to finalizing the settlement" to support a finding that Rayco acted in bad faith by refusing to finalize the settlement, the trial court held that appellees were not entitled to recover the attorney fees they incurred in enforcing the settlement agreement.

{¶ 62} Rayco appealed, raising the following three assignments of error for review:

> I. The trial court erred in finding that there was an enforceable settlement agreement entered into by the parties.
>
> II. The trial court erred by permitting appellees' counsel to testify in violation of the witness advocate rule.
>
> III. The trial court erred in applying a preponderance of the evidence standard to determine whether there was an enforceable settlement agreement.

{¶ 63} Murphy and Cavitch cross-appealed, raising the following single assignment of error for review:

> Whether the trial court erred as a matter of law when it failed to award appellees reasonable attorney fees incurred to enforce the settlement agreement.

{¶ 64} For ease of discussion, we address Rayco's assignments of error out of order.

**Law and Analysis**

**Motion to Enforce Settlement Agreement**

**Standard of Review**

{¶ 65} The standard of review applied when reviewing a ruling on a motion to enforce a settlement agreement depends on the question presented. If the question is a factual or evidentiary one, the reviewing court will not overturn the trial court's finding if there was sufficient evidence to support the finding. *Turoczy Bonding Co. v. Mitchell*, 8th Dist. Cuyahoga No. 106494, 2018-Ohio-3173, ¶ 15, citing *Chirchiglia v. Ohio Bur. of Workers' Comp.*, 138 Ohio App.3d 676, 679, 742 N.E.2d 180 (7th Dist.2000). If the issue is a question of contract law, the reviewing court must determine whether the trial court's order is based on an erroneous standard or a misconstruction of the law. *Turoczy* at ¶ 15. Rayco raises both factual and legal issues in its appeal.

**Requirements for an Enforceable Settlement Agreement**

{¶ 66} A settlement agreement is a contract designed to terminate a claim by preventing or ending litigation. *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). Like any other contract, it requires an offer, acceptance, consideration and mutual assent between two or more parties with the legal capacity to act. *See, e.g., Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16; *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376, 683 N.E.2d 337 (1997). For a contract to be enforceable, there must be a "meeting of the minds" as to the essential terms of the agreement.

*Kostelnik* at ¶ 16-17. The essential terms of the agreement must be "'reasonably certain and clear'" and mutually understood by the parties. *Id.*, quoting *Rulli* at 376. As the Ohio Supreme Court explained in *Rulli*:

> "A court cannot enforce a contract unless it can determine what it is. * * * [The parties] must have expressed their intentions in a manner that is capable of being understood. It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanying factors and circumstances, are not such that the court can determine what the terms of that agreement are."

*Rulli*, at 376, quoting 1 *Corbin on Contracts*, Section 4.1, at 525 (Rev.Ed.1993).

{¶ 67} The burden of establishing the existence and terms of a settlement agreement lies with the party who claims the agreement exists. *Turoczy* at ¶ 19, citing *Nilavar v. Osborn*, 127 Ohio App.3d 1, 11, 711 N.E.2d 726 (2d Dist.1998).

{¶ 68} Once a settlement offer has been accepted, the settlement agreement is mutually binding; the settlement agreement cannot be set aside simply because one of the parties later changes its mind. *See, e.g., Turoczy* at ¶ 18 ("Once there is * * * a meeting of the minds, one cannot refuse to proceed with settlement due to a mere change of mind."), citing *Mack v. Polson Rubber Co.*, 14 Ohio St.3d 34, 36-37, 470 N.E.2d 902 (1984); *Clark v. Corwin*, 9th Dist. Summit No. 28455, 2018-Ohio-1169, ¶ 13 ("'[W]hen the parties agree to a settlement offer, [the] agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.'"), quoting *Shetler v. Shetler*, 9th Dist. Wayne No. 00CA0070, 2001 Ohio App. LEXIS 2289, 4-5 (May 23, 2001); *Kostelnik* at ¶ 17 ("'[A]ll agreements have some degree of indefiniteness and some

degree of uncertainty'"; however, "'people must be held to the promises they make.'"), quoting 1 *Corbin on Contracts*, Section 4.1 at 530 (Perillo Rev.Ed.1993).

{¶ 69} It is only where the parties intend that there will be no contract until the agreement is fully reduced to writing and executed that no settlement exists unless the final, written settlement agreement is signed by all of the parties. *PNC Mtge. v. Guenther*, 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15. If a client authorizes its attorney to negotiate a settlement and the attorney negotiates a settlement within the scope of that authority, the client is bound by it. *See, e.g., Bromley v. Seme*, 2013-Ohio-4751, 3 N.E.3d 1254, ¶ 25 (11th Dist.) ("'It is well-recognized that a party may be bound by the conduct of his or her attorney in reaching a settlement.'"), quoting *Saylor v. Wilde*, 11th Dist. Portage No. 2006-P-0114, 2007-Ohio-4631, ¶ 12. A party cannot avoid a settlement that was negotiated through counsel by claiming that his attorney lacked actual authority to enter into the settlement. *See, e.g., Fugo v. White Oak Condominium Assn.*, 8th Dist. Cuyahoga No. 69469, 1996 Ohio App. LEXIS 2725, 8-12 (June 27, 1996); *Klever v. Stow*, 13 Ohio App.3d 1, 4-5, 468 N.E.2d 58 (9th Dist.1983); *see also Argo Plastic Prods. Co. v. Cleveland*, 15 Ohio St.3d 389, 392-393, 474 N.E.2d 328 (1984).

**The Existence of an Enforceable Settlement Agreement**

{¶ 70} In its first assignment of error, Rayco contends that the trial court erred in finding that the parties entered into an enforceable settlement agreement because (1) the $3,050,000 settlement offer Rayco made at the June 2016 mediation had lapsed by the time appellees purported to accept it and (2) its counsel's January

26, 2017 letters simply indicated Rayco's "willingness to re-open negotiations" and were not sufficiently "certain and clear regarding the settlement terms" to constitute a valid settlement offer. Rayco asserts that these letters simply summarized the parties' past settlement positions and made it clear that Rayco was still willing to consider settlement rather than specifying the terms upon which Rayco would settle the case. Rayco further contends that the letters could not be deemed settlement offers because they did not specifically allocate settlement amounts between Murphy and Cavitch and because they lacked "other essential settlement terms required to execute a proper settlement agreement."

{¶ 71} The trial court, however, did not find an enforceable settlement agreement based on the settlement demand Rayco made at the mediation or its counsel's January 26, 2017 letters to appellees' counsel. Rather, the trial court found that Murphy's counsel's February 23, 2017 email constituted an "unambiguous offer" to Rayco to settle the case for $3,050,000, which Rayco accepted when its counsel, Attorney Kehoe, left a voicemail message for Murphy's counsel later that day. The trial court found that the parties' agreement was "further evidenced" by (1) Attorney Drushal's February 24, 2017 email, (2) Rayco's counsel's circulation of its proposed revisions to the settlement agreement on March 10, 2017 leaving the figure of $3,050,000 undisturbed and (3) Attorney Kehoe's statement on April 4, 2017 that "the settlement document is fine" and that Bowling had previously agreed to the settlement.

{¶ 72} Accordingly, Rayco's first assignment of error is meritless.

**Standard of Proof**

{¶ 73}  In its third assignment of error, Rayco contends that the trial court instructed the jury regarding, and itself applied, the wrong standard of proof.  Rayco argues that if the trial court had properly instructed the jury that appellees needed to prove the existence of a settlement agreement by clear and convincing evidence rather than a preponderance of the evidence, "the jury may well have ruled in Rayco's favor."  Rayco further argues that "[t]o the extent the trial court acted independently of the advisory jury," the trial court erred in applying a preponderance of the evidence standard rather than a clear and convincing evidence standard in determining whether a settlement agreement existed.

{¶ 74} This was a bench trial with an advisory jury pursuant to Civ.R. 39(C)(1).  The advisory jury was not the factfinder in this case.  After receiving answers to interrogatories and the verdict from the advisory jury, the trial court made its own findings of fact and conclusions of law.  As the trial court stated in its journal entry: "Based upon all the evidence, I find that there is a contract to settle with terms that are clear and enforceable."  As such, any error in the trial court's instructions to the advisory jury was harmless.

{¶ 75} There is no indication in either the trial transcript or the trial court's decision what standard of proof the trial court applied in determining that a settlement agreement existed.  As a general matter, "[a] presumption of regularity attaches to all judicial proceedings." *State v. Raber*, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19.  This presumption of regularity extends to the trial

court's application of the correct burden of proof. Thus, we presume that the trial court applied the correct legal standard absent an affirmative demonstration otherwise. *See, e.g., In re Adoption of K.N.W.*, 4th Dist. Athens Nos. 15CA36 and 15CA37, 2016-Ohio-5863, ¶ 44; *Wilson v. Jones*, 3d Dist. Seneca No. 13-13-06, 2013-Ohio-4638, ¶ 28.

{¶ 76} Citing *Brilla v. Mulhearn*, 168 Ohio App.3d 223, 2006-Ohio-3816, 859 N.E.2d 578, ¶ 21 (9th Dist.), *Foor v. Columbus Real Estate Pros.com*, 5th Dist. Delaware No. 12 CAE 08 0063, 2013-Ohio-2848, ¶ 26, and *Ivanicky v. Pickus*, 8th Dist. Cuyahoga No. 91690, 2009-Ohio-37, ¶ 8, 13, Rayco contends that "[w]hen asked to enforce a settlement agreement," the "correct legal standard" is whether the record contains clear and convincing evidence of both the terms of the settlement agreement and the parties' assent to those terms. Rayco further contends that since the trial court instructed the advisory jury that appellees needed to prove the existence of a settlement agreement by a preponderance of the evidence, we must assume that the trial court applied a preponderance of the evidence standard in determining that the parties had agreed to settle the case for $3,050,000.

{¶ 77} Following a thorough review of the record and the relevant case law, we cannot say that the trial court applied the wrong standard of proof in determining that a settlement agreement existed in this case. In the cases cited by Rayco, the evidence the court relied upon when referencing the clear and convincing evidence standard was evidence of an oral settlement agreement. *See Brilla* at ¶ 20-21 (observing that "a settlement agreement may be enforced regardless of whether it

has been reduced to writing, as long as the terms of the agreement can be established by clear and convincing evidence" and concluding that an enforceable settlement agreement existed where, "even disregarding the magistrate's documentation of [the parties' settlement] agreement," it was clear to the court that the terms of the agreement and appellant's assent to those terms "may be established by clear and convincing evidence"), citing *Shetler*, 9th Dist. Wayne No. 00CA0070, 2001 Ohio App. LEXIS 2289, at 3 ("An oral settlement agreement 'can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence.'"), quoting *Pawlowski v. Pawlowski*, 83 Ohio App.3d 794, 799, 615 N.E.2d 1071 (10th Dist.1992); *Foor* at ¶ 5, 26 (where during a telephone conversation, counsel agreed that the parties would each "walk away" but the parties did not mutually understand what that meant, trial court erred in finding that a "completed settlement agreement" was proven by clear and convincing evidence); *see also Cugini & Capoccia Builders, Inc. v. Tolani*, 5th Dist. Delaware No. 15 CAE 10 0086, 2016-Ohio-418, ¶ 18 ("when the alleged settlement agreement is verbal and not written, the existence and the terms of such agreement must be established by clear and convincing evidence"); *Stanton v. Holler*, 7th Dist. Belmont No. 07 BE 29, 2008-Ohio-6208, ¶ 14 ("A settlement agreement that has not been reduced to writing may be enforced if its terms can be established by clear and convincing evidence.").

{¶ 78} In this case, by contrast, the purported settlement agreement is evidenced by writings on all sides, including the mutual exchange of drafts of the written settlement agreement that set forth the essential terms of the settlement.

{¶ 79} Further, in *Ivanicky*, although the appellant argued on appeal that the trial court had erred in enforcing appellee's motion to enforce a settlement agreement because appellee did not offer clear and convincing evidence that an oral settlement agreement had been reached, this court held only that the trial court had erred in failing to hold an evidentiary hearing prior to confirming the settlement; it did not indicate what standard should be applied in determining whether an enforceable settlement agreement existed. *Ivanicky* at ¶ 8, 13.

{¶ 80} Particularly where, as here, there is written evidence of a settlement agreement, other courts — including this court — have indicated that a preponderance of the evidence standard applies in determining whether a settlement agreement exists. *See, e.g., Hillbrook Bldg. Co. v. Corporate Wings*, 8th Dist. Cuyahoga No. 68619, 1996 Ohio App. LEXIS 3854, 9-13 (Sept. 5, 1996) ("'Reduced to its simplest terms, a settlement agreement is a contract. The party asserting the contract (settlement agreement) must prove by a preponderance of the evidence the existence of the elements of the contract, including an offer, acceptance and consideration as to the existence of the contract and as to its terms.'"), quoting *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236, 456 N.E.2d 1309 (10th Dist.1982); *Sutter v. Henkle*, 3d Dist. Mercer No. 10-15-14, 2016-Ohio-1143, ¶ 9; *Savoy Hospitality, L.L.C. v. 5839 Monroe St. Assocs. L.L.C.*, 6th Dist.

Lucas No. L-14-1144, 2015-Ohio-4879, ¶ 26; *Burrell Industries, Inc. v. Cent. Allied Ents.*, 7th Dist. Belmont Nos. 96 BA 18 and 96 BA 25, 1998 Ohio App. LEXIS 6176, 12-13 (Dec. 15, 1998); *Rondy, Inc. v. Goodyear Tire Rubber Co.*, 9th Dist. Summit No. 21608, 2004-Ohio-835, ¶ 7; *State v. Lomaz*, 11th Dist. Portage Nos. 2002-P-0118 and 2003-P-0062, 2006-Ohio-3886, ¶ 48; *see also DSW, Inc. v. Zina Eva, Inc.*, S.D.Ohio No. 2:11-cv-0036, 2011 U.S. Dist. LEXIS 143377, 5 (Dec. 13, 2011) ("Although there is some suggestion that if the agreement is oral only, the burden of proof is by clear and convincing evidence, * * * where there is a written agreement, the burden (under Ohio law) appears to be the same as in any other case based on breach of contract, and that is to 'prove by a preponderance of the evidence the existence of the elements of the contract, including offer, acceptance and consideration both as to the existence of the contract and as to its terms.'"), quoting *Ohio State Tie & Timber* at 240.

{¶ 81} In this case, however, regardless of whether a preponderance of the evidence or a clear and convincing evidence standard applies, a review of the record shows that the trial court's finding that the parties entered into an enforceable settlement agreement is supported by sufficient competent, credible evidence. Here, the material facts relating to the parties' settlement negotiations were undisputed. Based on the facts set forth in the parties' joint stipulation of undisputed facts, not only was there a clear offer and acceptance showing a mutual understanding of the essential terms, the parties thereafter confirmed their settlement agreement in various follow-up communications. The only evidence

Rayco offered to refute the existence of a settlement agreement was Attorney Drushal's testimony that he believed "everybody needed to sign off" on the final version of the agreement before the parties had a settlement. However, that testimony was contradicted by (1) his co-counsel's April 4, 2017 voicemail message to Attorney Vargo (in which Attorney Kehoe stated indicated that "[t]he settlement document itself is fine" and that "[w]e had John [Bowling's] commitment to settle with the number that we agreed upon, but he's being a little bit difficult in getting the document signed") and (2) Attorney Kehoe's testimony at the hearing that he had intended, by his words and actions, to consummate a settlement with appellees' counsel. Thus, the uncontroverted evidence in this case was not only sufficient to prove the existence of a settlement agreement by the greater weight of the evidence under a preponderance of the evidence standard but was also sufficient to produce a firm belief or conviction in the mind of the trier of fact as to the existence of a settlement agreement, so as to establish the existence of a settlement agreement under a clear and convincing evidence standard. *See In re Phillips*, 3d Dist. Marion Nos. 9-96-44, 9-96-45, and 9-96-46, 1997 Ohio App. LEXIS 1152, 4-8 (Mar. 13, 1997) (trial court's improper use of a lower standard of proof was harmless error where the evidence plainly demonstrated that the movant had proven its case by the requisite clear and convincing evidence).

{¶ 82} Accordingly, we overrule Rayco's third assignment of error.

**The Witness-Advocate Rule**

{¶ 83} In its second assignment of error, Rayco argues that the trial court erred by permitting appellees' counsel to testify at the hearing in violation of the "witness-advocate rule." The "witness-advocate rule" is based on Prof.Cond.R. 3.7(a). That rule provides:

> A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless one or more of the following applies:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case;
>
> (3) the disqualification of the lawyer would work substantial hardship on the client.

{¶ 84} Prof.Cond.R. 3.7(a), however "does not render a lawyer incompetent to testify as a witness on behalf of his client. Rather, * * * the [r]ule functions to allow the court to exercise its inherent power of disqualification to prevent a potential violation of [the ethics rules]." *Damron v. CSX Transp., Inc.*, 184 Ohio App.3d 183, 2009-Ohio-3638, 920 N.E.2d 169, ¶ 39 (2d Dist.); *see also Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256, 258-259, 510 N.E.2d 379 (1987) (noting that the "Code of Professional Responsibility 'does not delineate rules of evidence but only sets forth strictures on attorney conduct'" and that "[w]hen an attorney seeks to testify, his employment as counsel goes to the weight, not the competency, of his testimony"), quoting *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equip. Corp.*, 546 F.2d 530, 539 (3d Cir. 1976). In *Mentor Lagoons*, the

Ohio Supreme Court, applying the disciplinary rules then in place, set forth a procedure for courts to follow in determining whether a lawyer can serve as both an advocate and a witness. *Mentor Lagoons* at paragraph two of the syllabus; *see also 155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 427-428, 650 N.E.2d 869 (1995). As the Second District explained in *Damron*, when applying that procedure in the context of the subsequently adopted Ohio Rules of Professional Conduct:

> In determining whether a lawyer can serve as both an advocate and a witness, a court must first determine the admissibility of his testimony without reference to the Disciplinary Rules. If the court finds the testimony admissible, and a party or the court moves for the attorney to withdraw or be disqualified, the court must then consider whether any exceptions to Prof.Cond.R. 3.7(a) apply to permit the attorney to both testify and continue representation.

*Id.* at ¶ 39. Where a party moves for disqualification, the moving party bears the burden of proving that disqualification is necessary. *McCormick v. Maiden*, 6th Dist. Erie No. E-12-072, 2014-Ohio-1896, ¶ 11, citing *Baldonado v. Tackett*, 6th Dist. Wood No. WD-08-079, 2009-Ohio-4411, ¶ 20. The burden of proving that one of the exceptions in Prof.Cond.R. 3.7(a)(1)-(3) applies falls upon the attorney seeking to claim the exception. *McCormick* at ¶ 11.

{¶ 85} In this case, the trial court was not asked to exercise its "inherent power of disqualification" to prevent a potential violation of the Rules of Professional Conduct. Instead, after appellees' counsel conducted voir dire, gave their opening statements and called their first witness — Attorney Vargo — Rayco's counsel objected to his testimony based on the witness-advocate rule.

**{¶ 86}** It should have come as no surprise that counsel for appellees would testify at the evidentiary hearing. This is not a case in which the testimony presented could have been elicited by other means. Aside from the mediator and the clients themselves, who were not directly involved in the settlement negotiations after the parties stopped working with the mediator, the only persons with personal knowledge regarding the parties' settlement negotiations were the parties' attorneys. Although the parties had attempted to avoid having their attorneys testify by submitting a joint motion for leave to file a stipulation of undisputed facts regarding appellees' motion to enforce settlement agreement, the trial court denied their request to have appellees' motion decided based on the stipulation.

**{¶ 87}** As explained in the comments to Prof.Cond.R. 3.7, the rationale for the advocate-witness rule is as follows:

> The tribunal has proper objection when the trier of fact may be confused or misled by a lawyer serving as both advocate and witness. The opposing party has proper objection where the combination of roles may prejudice that party's rights in the litigation. A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Comment 2, Prof.Cond.R. 3.7.

**{¶ 88}** Rayco argues that it was prejudiced by appellees' counsel serving as both witnesses and advocates at the hearing because it enabled appellees' counsel to refer to their own testimony during closing arguments and urge the jury to accept

their recitation of the facts — in essence vouching for "the truthfulness of their own testimony."

{¶ 89} However, in this case, the jury had only an advisory role. The advisory jury gave its "advice," based on its view of the evidence, to the trial court, but its decision was not binding on the trial court. The trial court was required to make its own independent findings of fact and conclusions of law as if there had been no verdict from the advisory jury. The trial court was well aware of the different roles assumed by appellees' counsel at the hearing and was not likely to be confused or misled by the lawyers' dual capacities. *See Michael P. Harvey Co., L.P.A. v. Ravida*, 2012-Ohio-2776, 972 N.E.2d 1087, ¶ 5 (8th Dist.) (noting that "[t]he concerns expressed in the comments to Prof.Cond.R. 3.7(a)(2)" had "no applicability" where the case was tried to the court, the court "fully understood" that lawyer was acting pro se and "should have been able to distinguish between his role as advocate and his role as a witness without the same risk of confusion that might have been present had the case been tried to a jury").

{¶ 90} Further, the matters as to which appellees' counsel testified were not in dispute. *See* Prof.Cond.R. 3.7(a)(1). Appellees' counsel's testimony tracked the stipulation of undisputed facts the parties had jointly submitted and admitted into evidence at the hearing. When testifying on cross-examination, Attorney Kehoe acknowledged that 95 percent of appellees' counsel's testimony was "substantively accurate" and that the "few details around the edges that [he] might * * * state differently" were not material.

**{¶ 91}** Accordingly, Rayco was not prejudiced by appellees' attorneys' testimony and the trial court did not abuse its discretion or otherwise err in permitting appellees' attorneys to testify at the hearing. *See Erie Air Conditioning & Heating, Inc. v. S.C. Co.*, 8th Dist. Cuyahoga No. 63216, 1993 Ohio App. LEXIS 3652, 19-22 (July 22, 1993) (trial court did not abuse its discretion in failing disqualify plaintiff's counsel or in allowing plaintiff's counsel to testify in defense of counterclaim and in rebuttal of defendants' case-in-chief where motion to disqualify counsel was filed on the eve of trial and to have prevented counsel from testifying would have worked a substantial hardship on the client given counsel's unique role in the contested dealings). Rayco's second assignment of error is overruled.

**Request for Attorney Fees Incurred to Enforce the Settlement Agreement**

**{¶ 92}** In their cross-assignment of error, appellees argue that the trial court erred in denying their request for an award of the reasonable attorney fees they incurred to enforce the parties' settlement agreement. Rayco argues that the American Rule "applies to actions seeking to enforce a settlement agreement" and that the trial court properly denied appellees' request for attorney fees because "in the absence of a finding of bad faith, a trial court commits reversible error in awarding attorney fees on a motion to enforce a settlement agreement." Applying the decision of the en banc court above, we find that the trial court erred in refusing to award appellees their reasonable attorney fees incurred in enforcing the

settlement agreement as compensatory damages for Rayco's breach of the settlement agreement.

{¶ 93} Rayco also argues that we should affirm the trial court's decision to deny appellees' request for attorney fees because appellees presented no evidence at the hearing regarding the amount of attorney fees they incurred in enforcing the settlement agreement or the reasonableness of those fees. However, as stated in the trial court's journal entry, the issue to be decided at the hearing was "whether the parties entered into a contract to settle the lawsuit."[8] After that issue was decided, the trial court inquired whether it had "enough law [and] evidence" to decide "whether to award fees or not." The trial court granted the parties leave to submit "legal briefs" on the "legal question of what circumstances give rise to an award of attorneys' fees in favor of [a] prevailing movant to enforce [a] settlement agreement" and whether "a motion to enforce in and of itself gives rise to a potential entitlement for fees." There was no opportunity for appellees to present evidence as to the amount of attorney fees they contended should have been awarded.

{¶ 94} Accordingly, appellees' cross-assignment of error is sustained.

{¶ 95} The trial court's judgment is affirmed to the extent that it grants appellees' motion to enforce the settlement agreement and reversed to the extent that it denies appellees' motion for attorney fees. Case remanded for a

---

[8] Appellees also filed a motion in limine to limit testimony and evidence at the hearing to the issue of the "settlement between the parties," which the trial court granted.

determination of the amount of reasonable attorney fees appellees incurred to enforce the settlement agreement.

{¶ 96} Judgment affirmed in part; reversed in part; case remanded.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MARY J. BOYLE, J., and
RAYMOND C. HEADEN, J., CONCUR